UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO CABALLERO,<br><br>                              Plaintiff,<br><br>               v.<br><br>FUERZAS ARMADAS, REVOLUCIONARIAS DE COLOMBIA a/k/a FARC-EP a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA and the NORTE DE VALLE CARTEL,<br>                              Defendants. | Case No. 20-mc-00249-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF THE VENEZUELAN
THIRD PARTIES' MOTION TO VACATE ORDERS, QUASH
WRIT OF EXECUTION, AND STAY PROCEEDINGS**

KELLNER HERLIHY GETTY & FRIEDMAN LLP
470 Park Avenue South—7th Floor
New York, New York 10016-3951
Telephone: (212) 889-212
Email: dak@khgflaw.com

*Attorneys for Petrocedeño, S.A., Petróleos de
Venezuela, S.A. , Ministerio del Poder Popular de
Economia y Finanzas (Venezuela's Ministry of
Finance), Banco de Venezuela S.A., Banco Universal,
Banco Central de Venezuela, Banco Bandes Uruguay
SA, Aceites y Solventes Venezolanos Vassa, S.A., PDV
Marina, S.A., Venfleet Asphalt, Ltd., Venfleet Products,
Ltd., Venfleet, Ltd., and Petro San Felix, S.A (the
"Venezuelan Third Parties")*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 4

ARGUMENT ..................................................................................... 6

I.   The Court lacked subject matter jurisdiction to issue the Orders and the
     Writ ...................................................................................... 6

II.  The Court lacked personal jurisdiction to enter the Orders and the Writ ...... 8

III. The Orders and Writ are null and void for lack of service ...................... 9

IV.  TRIA does not apply to Petrocedeño or the other moving entities because
     TRIA applies to "agencies or instrumentalities" of state sponsors of
     terrorism only ......................................................................... 10

V.   The Court lacks jurisdiction over the purported assets of Petrocedeño and
     the other moving entities because Caballero fails to meet the requirements
     of TRIA ................................................................................ 13

     A.  Caballero has not proven that Petrocedeño, or any of the other movants,
         or the FARC own the blocked assets .......................................... 13

     B.  Caballero has not demonstrated that Petrocedeño or any other movant
         is an agency or instrumentality of the FARC as of July 2020 ................ 13

     C.  The FARC is not a "terrorist party" .......................................... 16

VI.  This proceeding should be stayed pending *Havlish* ............................ 17

     CONCLUSION ............................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Page**

*Caballero v. Fuerzas Armadas Revolucionarias De Colombia,*
No. 4:21-CV-00140, 2023 WL 125240 (S.D. Tex. Jan. 6, 2023), appeal
dismissed sub nom. Caballero v. Vitol, Inc., No. 23-20115, 2023 WL
10478978 (5th Cir. July 7, 2023) ................................................5, 10, 14, 20, 23

*Calderon-Cardona v. Bank of New York Mellon,*
770 F.3d 993 (2d Cir. 2014) .................................................................... 21, 22

*Daimler AG v. Bauman,*
571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) .................................10

*Epperson v. Ent. Express, Inc.,*
242 F.3d 100 (2d Cir. 2001) .............................................................................8

*Est. of Heiser v. Islamic Republic of Iran,*
885 F. Supp. 2d 429 (D.D.C. 2012), aff'd sub nom. Heiser v. Islamic
Republic of Iran, 735 F.3d 934 (D.C. Cir. 2013) ............................................15

*Harrison v. Republic of Sudan,*
No. 13-CV-3127 (PKC), 2017 WL 946422 (S.D.N.Y. Feb. 10, 2017) ...........18

*In re Terrorist Attacks on Sept. 11, 2001,*
657 F. Supp. 3d 311 (S.D.N.Y. 2023) ........................................................2, 23

*Kirschenbaum v. 650 Fifth Ave. & Related Properties,*
830 F.3d 107 (2d Cir. 2016), abrogated by Rubin v. Islamic Republic of Iran,
583 U.S. 202, 138 S. Ct. 816 (2018) ................................ 11, 13, 14, 16, 17, 18

*Lunney v. United States,*
319 F.3d 550 (2d Cir. 2003) ...........................................................................16

*Peacock v. Thomas,*
516 U.S. 349, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996) ...................................7

*Republic of Philippines v. Pimentel,*
553 U.S. 851, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008) ................................9

*Ruth Calderon-Cardona v. JPMorgan Chase Bank, N.A.,*
867 F. Supp. 2d 389 (S.D.N.Y. 2011), aff'd in part, vacated in part, remanded
sub nom. Calderon-Cardona v. Bank of New York Mellon, 770 F.3d 993 (2d
Cir. 2014) ......................................................................................................21

*Stansell v. Revolutionary Armed Forces of Colombia (FARC)*,
No. 16MC00405LGSSN, 2022 WL 2530359 (S.D.N.Y. Mar. 29,
2022), report and recommendation adopted sub nom. Stansell v.
Revolutionary Armed Forces of Colombia, No. 16MISC405LGSSN, 2022
WL 17830551 (S.D.N.Y. Dec. 21, 2022) ........................................................4

*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.*,
99 F. Supp. 2d 450 (S.D.N.Y. 2000) ............................................................16

*UBS Bank USA v. Pierce*,
No. CV1303418BROSSX, 2013 WL 12205047 (C.D. Cal. Oct. 28, 2013)....11

*United States v. Matteo*,
718 F.2d 340 (2d Cir. 1983) .........................................................................13

*Water Splash, Inc. v. Menon*,
581 U.S. 271, 137 S. Ct. 1504, 197 L. Ed. 2d 826 (2017)...........................19

*Weinstein v. Islamic Republic of Iran*,
609 F.3d 43 (2d Cir. 2010) ...........................................................................15

## STATUTES, RULES, & OTHER AUTHORITIES

18 U.S.C. §233(e) ................................................................................................7

28 U.S.C. § 1610 ...............................................................................................12

28 U.S.C. § 1610(f)(1) .......................................................................................12

28 U.S.C. § 1605 ...............................................................................................15

28 U.S.C. § 1606 ...............................................................................................15

28 U.S.C. § 1607 ...............................................................................................15

Federal Rules of Civil Procedure 4 ....................................................................4

Federal Rules of Civil Procedure 69 ...............................................................1, 8

Fla. Stat. § 77.041 .............................................................................................20

H.R. Rep No. 107-179 .......................................................................................12

New York Civil Practice Law and Rules § 5230 .............................................1, 9

TRIA § 201 ..................................................................................................17, 22

TRIA § 201(a)...............................................................................................17, 22

The Venezuelan Third Parties[1] submit this memorandum in support of their Motion to Vacate the Court's Orders dated March 9, 2021 (DE 51), January 13, 2023 (DE 67 and DE 68), May 4, 2022 (DE 92), and December 9, 2024 (DE 118) (the "Orders"), Quash Writ of Execution dated December 9, 2024 (the "Writ")(DE 118) entered under those Orders, and Stay Proceedings.

It was improper for the Court to issue an *ex parte* writ of execution and other orders against assets that belong to entities other than the judgment debtor in violation of Rule 69 of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules § 5230.

## **<u>INTRODUCTION</u>**

The Venezuelan Third Parties are all entities ultimately owned by the Republic of Venezuela ("Venezuela"). Plaintiff Antonio Caballero ("Caballero") does not have a judgment against Venezuela, PDVSA, or Petrocedeño, or any of the other affiliated moving parties—all of whom are protected by immunities of the Foreign Sovereign Immunities Act ("FSIA"). There is no applicable exception to the immunities (jurisdictional and execution) enjoyed by the Republic and its entities under FSIA because Venezuela has not been declared a state sponsor of terrorism. Thus, as this Court has held in a similar matter presided over by the Honorable George B. Daniels, the Terrorism Risk Insurance Act of 2002 ("TRIA") is not available and does not overcome the immunities afforded by FSIA to Venezuela and its entities. *See In re: Terrorist Attacks on*

---

[1] The moving interested parties, Petrocedeño, S.A., Petróleos de Venezuela, S.A. , Ministerio del Poder Popular de Economia y Finanzas (Venezuela's Ministry of Finance), Banco de Venezuela S.A., Banco Universal, Banco Central de Venezuela (the Central Bank of Venezuela), Banco Bandes Uruguay SA, Aceites y Solventes Venezolanos Vassa, S.A., PDV Marina, S.A., Venfleet Asphalt, Ltd., Venfleet Products, Ltd., Venfleet, Ltd., and Petro San Felix, S.A.do not consent to jurisdiction in this Court and reserve all rights, defenses, privileges, and immunities, including, but not limited to, lack of jurisdiction, lack of service of process, and defective service of process.

.

*September 11, 2001*, 657 F. Supp. 3d 311, 329–32 (S.D.N.Y. 2023), *sub nom. Havlish v. Bin Ladin*, No. 23-258 (2d Cir. Feb. 28, 2023).

Caballero is the plaintiff in various collection actions under TRIA against Petrocedeño and other PDVSA affiliates in various district courts around the country, including in this Court.[2] All of those actions, except this one, are either dormant or have been stayed pending the outcome of the appeal of Judge Daniel's ruling in *Havlish*, which would eliminate the basis for Caballero's TRIA collection efforts.[3]

Caballero previously obtained a default judgment against the Fuerzas Armadas Revolucionarias de Colombia ("FARC") in the Southern District of Florida and seeks to shift liability to parties not named as defendants in the underlying action. Invoking the TRIA, Caballero obtained two *ex parte* Orders (discussed in more detail below) labeling Petrocedeño an "agency or instrumentality" of the FARC and subsequently obtained a corresponding Writ (DE 118) issued to JPMorgan Chase Bank, N.A. ("Chase"), which purportedly holds funds belonging to Petrocedeño.

Those Orders are based exclusively on two other *ex parte* orders from the Southern District of Florida that found Petrocedeño is an agency and instrumentality of the FARC. And here, Caballero obtained the Orders without making any attempt whatsoever to serve Petrocedeño or any of the other moving entities with process in this matter. Due process forbids this result.

---

[2] *See Caballero v. FARC*, No. 20-mc-00040 (W.D.N.Y.); *Caballero v. FARC*, No. 20-cv-04485 (D.S.C.); *Caballero v. FARC*, No. 20-cv-1939 (D. Conn.); *Caballero v. FARC*, No. 20-mc-00105 (M.D. Fla.); *Caballero v. FARC*, No. 20-mc-00045 (D. Minn.); *Caballero v. FARC*, No. 21-cv-1668 (S.D. Tex.); *Caballero v. FARC*, 21-cv-00140 (S.D. Tex.); *see also Stansell v. FARC*, No. 16-mc-00405 (S.D.N.Y.); *Pescatore v. FARC*, No. 18-mc-00545 (S.D.N.Y.).

[3] *Caballero v. FARC*, No. 20-cv-1939 (D. Conn.), is pending resolution of *Doe v. Taliban*, No. 23-1158 (2d. Cir. Nov. 21, 2023), which will determine whether there is a temporal limitation with respect to an agency and instrumentality determination.

In fact, neither Petrocedeño nor any of the other moving parties has any connection with the FARC. Petrocedeño is a Venezuelan corporation that produces extra-heavy crude oil from the Orinoco Belt in Venezuela and transports and converts the extra-heavy crude oil to light crude oil. Petrocedeño is an indirect subsidiary of PDVSA; it is 100% owned by Corporacion Venezolana de Petróleos, which in turn is 100% owned by PDVSA. Similarly, each of the other moving entities are owned by the government of Venezuela.

The *ex parte* Orders and Writ directed at Petrocedeño, the other Venezuelan Third Parities and their purported assets must be vacated for the following reasons.

First, Caballero does not establish an independent basis for this Court's subject matter jurisdiction. While Caballero classifies this proceeding as a mere post-judgment execution proceeding, this is misleading. Caballero does not seek to execute on the assets of the judgment debtor, the FARC. Instead, Caballero attempts to use this proceeding to shift the financial liability from the judgment debtor (the FARC) to third parties who were never named as defendants in the underlying proceeding.

Second, because this proceeding effectively shifts liability to a new party, Caballero was required (but failed) to establish this Court's personal jurisdiction over Petrocedeño and each of the other entities whose assets Caballero wishes to subject to enforcement of its judgment against FARC..

Third, Caballero did not serve Petrocedeño or any of the other moving entities with process as required under Rule 4 of the Federal Rules of Civil Procedure.

Fourth, TRIA does not apply to Petrocedeño or any of the other moving entities—that are not owned by a state sponsor of terrorism. The plain language of TRIA compels this conclusion.

3

Fifth, Caballero failed to satisfy the elements of TRIA. Caballero has not established that Petrocedeño, or the other moving entities, or the FARC are the "owners" of the blocked assets at issue. Nor has Caballero proven that any of the moving entities is an "agency or instrumentality" of the FARC, particularly during the relevant time period, July 2020, when Caballero commenced this action. Furthermore, the declarations of Petrocedeño, PDVSA, and David Falt (Exhibits 2 and 3), demonstrate that Petrocedeño and its affiliates are not agencies or instrumentalities of the FARC. Accordingly, the Orders must be vacated, and the Writ must be quashed.

Furthermore, like the myriad other actions brought by Caballero, including the *Stansell/Pescatore*[4] actions pending before Judge Schofield, this proceeding should be stayed pending the Second Circuit's disposition in *Havlish*. Until November 2024, this proceeding was dormant because Caballero proceeded with his collection efforts in the *Stansell/Pescatore* actions, which involve most of the same assets at issue here. Caballero's November 2024 request for a writ of execution against Petrocedeño's assets is a transparent attempt to proceed behind Petrocedeño's and adverse claimants' backs.

## BACKGROUND

On July 6, 2020, Caballero registered with this Court a May 20, 2020 default judgment against the FARC in the aggregate amount of over $140 million for alleged terrorism-related injuries. DE 2; *see also Caballero v. FARC*, No. 18-cv-25337 (S.D. Fla.).

On November 25, 2020, Caballero initiated the instant proceeding against Petrocedeño and the other moving entities on an *ex parte* basis under TRIA, claiming that Petrocedeño and the other movants are an "agency or instrumentality" of the FARC, and moved for corresponding writs of execution directed at Sumitomo Mitsui Banking Corporation ("Sumitomo") regarding certain

---

[4] *Stansell v. FARC*, No. 16-mc-00405 (S.D.N.Y.); *Pescatore v. FARC*, No. 18-mc-00545 (S.D.N.Y).

assets that are purportedly held on behalf of Petrocedeño. *See* DE 6 at 2. On January 13, 2021, the Court granted Caballero's motion, and found that "Petrocedeño S.A. is an agent and instrumentality of the FARC," directed the Clerk of Court to issue a writ of attachment against Sumitomo, and "authorized and directed [the Clerk of Court] to issue such further writs in aid of execution[.]" DE 67. The Court enteres similar *ex parte* findings against the other Venezuelan Third Parties in DE 68.

Shortly thereafter, on January 14, 2021, Caballero submitted a pre-motion conference letter in *Stansell/Pescatore* seeking to intervene in that case, arguing that he was an adverse claimant to Petrocedeño's blocked account held by Sumitomo. *Stansell* DE 134. Intervention was ultimately unnecessary because the garnishees determined that the best procedure for adjudicating and determining the adverse interest of the judgment creditors was through the initiation of interpleader complaints. Therefore, Caballero actively litigated his entitlement to Petrocedeño's assets in the *Stansell/Pescatore* actions, as opposed to the instant matter.

That is why the instant action had minimal activity for years. Even when Caballero obtained a second order granting him a writ of execution directed against Petrocedeño in May of 2022 (DE 92), he did not proceed on that writ of execution because of his intervention in *Stansell/Pescatore*.[5]

In the *Stansell/Pescatore* actions, Caballero's efforts were stayed, first against Venezuela's Ministry of Finance on August 2, 2023, and then against various PDVSA subsidiaries, including

---

[5] Caballero's second *ex parte* motion for writ of execution (DE 57) remains sealed. Petrocedeño respectfully requests that this filing be unsealed so that counsel can fully assess the Court's reasoning and take appropriate steps to seek relief in connection with Caballero's one-sided motions practice.

Petrocedeño, on May 26, 2024, all of whom have filed motions to vacate adverse orders and quash writs of execution issued against them and which remain pending. *See Stansell* DE 551.

Five months into the stay in *Stansell/Pescatore*, on November 18, 2024, Caballero without notice to Petrocedeño (against whom he had been litigating in this Court in *Stansell/Pescatore*) moved for an *ex parte* writ of execution (filed under seal) requesting that the Court authorize Caballero to attach assets purportedly held on behalf of Petrocedeño at JPMorgan Chase Bank, N.A. ("Chase").

On December 9, 2024, the Court entered the *ex parte* Writ (DE 118) and concluded that "Plaintiff Antonio Caballero has adequately established that (i) he has obtained an ATA judgment against a terrorist party that is based on an act of international terrorism; (ii) the assets which Mr. Caballero seeks to execute on are 'blocked assets' as that term is defined under the TRIA and the ATA, 18 U.S.C. §233(e); (iii) the total amount of the execution does not exceed the amount outstanding of Mr. Caballero's ATA Final Judgment; and (iv) an agency or instrumentality of the FARC has an interest in the subject blocked assets[.]" DE 118 at 2.

The Court then "directed [the Clerk of Court] to issue the Writ of Execution for the levy of the blocked assets within this Court's jurisdiction held by Garnishee, [Chase] for service and levy on [Chase] to execute and/or attach any assets . . . within this Court's jurisdiction in the putative name of, or for the benefit or, or that were blocked due to an association with Petrocedeño S.A." *Id.* at 2–3.

Ironically, when Caballero sought to intervene in the *Stansell/Pescatore* action, he accused the *Stansell/Pescatore* plaintiffs of "seeking to turnover of assets they know are the subject of other stayed proceedings." *Stansell* DE 134.

## ARGUMENT

### I.    The Court lacked subject matter jurisdiction to issue the Orders and the Writ.

It is well settled that a judgment creditor seeking to impose liability on a party "not already liable for that judgment" must initiate a new civil action. *Peacock v. Thomas*, 516 U.S. 349, 357 (1996). "Since *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability." *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001). Caballero has not commenced mere ancillary collection proceedings. Instead, he has raised a completely new controversy against new parties—Petrocedeño and the other Venezuelan entities who have joined this motion—in order to shift liability. Caballero's efforts are nothing short of an attempt to obtain a judicial declaration that Petrocedeño—and indeed the entire government of Venezuela—effectively constitutes an alter-ego of the FARC.

Because Caballero seeks to hold Petrocedeño and the other moving entities liable for default judgments against the FARC, under *Peacock* and *Epperson*, he was required to bring a new independent action to establish this Court's jurisdiction. Caballero failed to do so. Accordingly, this Court lacks subject matter jurisdiction over this TRIA proceeding.

Rule 69 of the Federal Rules of Civil Procedure requires that, "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located." New York Civil Practice Law and Rules § 5230 explicitly limits a writ of execution by requiring "that only the property in which a named judgment debtor or obligor . . . has an interest, or the debts owed to the named judgment debtor or obligor, be levied upon." New York law does not authorize a writ of execution directed to a party who is not named as a judgment debtor in the judgment that is the subject of enforcement.

7

Moreover, PDVSA is a necessary and indispensable party because Caballero' argument relies on conclusory allegations of a purported relationship between PDVSA and the FARC. Caballero's failure to join PDVSA to this action requires dismissal. *See Philippines v. Pimentel*, 553 U.S. 851, 865 (2008). Finally, this Court also lacks subject matter jurisdiction because, as explained below, there is no applicable exception to FSIA immunities enjoyed by Petrocedeño and the other moving entities.

## II.     The Court lacked personal jurisdiction to enter the Orders and the Writ.

Petrocedeño is a Venezuelan corporation that is not subject to this Court's jurisdiction, and Caballero fails to assert any allegations that personal jurisdiction over Petrocedeño exists in this matter. Similarly, Caballero fails to assert any allegations that personal jurisdiction over the other Venezuelan Third Parties exists in this matter.  General jurisdiction requires a showing that the party at issue is at home in the jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). The Court does not have general personal jurisdiction over Petrocedeño because Petrocedeño is incorporated in Venezuela and maintains its principal place of business in Venezuela, not the United States. With regard to specific personal jurisdiction, as discussed below, Caballero has not alleged that Petrocedeño or the other entities who have joined this motion engaged in any specific activities on behalf of the FARC, much less that they have engaged in any activity in the United States. Because this Court does not have personal jurisdiction over Petrocedeño or the other moving entities, the Orders must be vacated, and the Writ must be quashed.

Caballero apparently believes that personal jurisdiction over Petrocedeño and the other entities who have joined this motion is not required because this action is simply a "post-judgment enforcement" action, but he is mistaken. As set forth in Section I, Caballero seeks to shift liability

to parties not named in the underlying action that produced the default judgment he seeks to collect. Once an independent basis for subject matter jurisdiction has been established (as required), personal jurisdiction over the defendants in that action must naturally be established as well. Anything less would run afoul of due process.

**III.    <u>The Orders and Writ are null and void for lack of service.</u>**

Additionally, because Caballero has not served Petrocedeño or any of the other moving entities with process in this action, the Orders and the Writ must also be vacated for lack of service of process. *See Caballero v. FARC*, 2023 WL 125240, at *7 (S.D. Tex. Jan. 6, 2023) ("[T]he hallmark of due process is notice and a chance to be heard."). *UBS Bank USA v. Pierce*, No. CV1303418BROSSX, 2013 WL 12205047, at *1 (C.D. Cal. Oct. 28, 2013) ("Service of process is not just another item on a litigant's procedural checklist. At the core of proper service of a summons and complaint on a prospective defendant is the fulfillment of an essential element of our judicial system, an element required to establish in personam jurisdiction over the defendant, an element whose absence would render a judgment null and void: this element is due process.").

Furthermore, to the extent that Caballero claims that Petrocedeño and the other moving entities are alter egos of Venezuela, they are entitled to all FSIA immunities available to Venezuela, including the requirement of service of process under FSIA. *See Kirschenbaum v. 650 Fifth Ave. and Related Props.*, 830 F.3d 107, 128–129 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018) (confirming that an alleged alter ego of a foreign state shares the foreign state's sovereign immunity, even if it would not otherwise be entitled to immunity under the FSIA). As such, proper service under FSIA would be required to establish personal jurisdiction over Petrocedeño and each of the other entities whose assets are addressed in the Court's orders.

IV. **TRIA does not apply to Petrocedeño or the other moving entities because TRIA applies to "agencies or instrumentalities" of state sponsors of terrorism only.**

The plain language and legislative history of TRIA establish that TRIA applies to "agencies or instrumentalities" of state sponsors of terrorism only. Because Venezuela has not been classified as a state sponsor of terrorism by the U.S. Department of State, and because Caballero has not obtained a terrorism-related judgment against Venezuela itself, Caballero cannot use TRIA to execute on the property of the moving entities.

TRIA was codified as a note to 28 U.S.C. § 1610 of the FSIA. Section 1610(f)(1) provides that the assets of foreign states are not immune from attachment *if the foreign state is a designated state sponsor of terrorism*. Indeed, Congress enacted TRIA to overcome the presumption of "juridical separateness" between designated state sponsors of terrorism and their agencies or instrumentalities. According to Senator Harkin, TRIA deals "comprehensively with the problem of enforcement of judgments issued to victims of terrorism" by providing that, "for purposes of enforcing a judgment *against a terrorist state*, [TRIA] does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities." 148 Cong. Rec. 23122 (2002) (emphasis added); *see* H.R. Rep. No. 107-779 at 27 (clarifying that TRIA "deals comprehensively" with the problem by "build[ing] upon and extend[ing] the principles in section 1610(f)(1)").

Thus, TRIA must be interpreted in connection with section 1610's purpose to increase the availability of a foreign state's assets to satisfy terrorism-related judgments against foreign states that have been declared a state sponsor of terrorism. *See United States v. Matteo*, 718 F.2d 340, 341 (2d Cir. 1983) ("In determining the scope of the statute and the persons to whom it is applicable, we must consider not only the plain meaning of the language used in the statute, but also must interpret that language in light of the purposes Congress sought to serve by promulgating

10

the relevant laws."). That purpose is wholly absent here, where Petrocedeño is not the judgment debtor, and Venezuela is not a state sponsor of terrorism.

Movants acknowledge that in *Kirschenbaum v. 650 Fifth Avenue and Related Properties*, the Second Circuit established a three-pronged test to determine agency or instrumentality status under TRIA. 830 F.3d at 135 (holding that an agency or instrumentality "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, or on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party."). However, unlike this case, *Kirschenbaum* involved an effort to attach the property of an agency or instrumentality of a state sponsor of terrorism (Iran), which was also the judgment debtor. *See id*. at 116, 131–32. Therefore, the Second Circuit did not consider whether, and under what circumstances (if any), an agency or instrumentality of a foreign state can also be an agency or instrumentality of a non-state terrorist entity. A narrow construction of *Kirschenbaum* based on its context—a case involving a state sponsor of terrorism—is therefore appropriate. *Id.* at 35.

On September 20, 2022, the United States filed a Statement of Interest in a related action filed by Caballero in the Western District of New York, No. 20-mc-40 ("Caballero WDNY Action"). *See* Caballero WDNY Action, DE 125.[6] In its Statement of Interest, the United States correctly observes that the Second Circuit's interpretation of the agency or instrumentality standard in *Kirschenbaum* should not be extended to agencies or instrumentalities of foreign states that have not been designated as state sponsors of terrorism. *Id.* at 31–33. To do so would

---

[6] On October 31, 2022, Caballero and PDVSA each filed a response to the United States' Statement of Interest. *See* Caballero WDNY Action, DE 131 and 132. On December 15, 2022, the United States filed a non-substantive reply brief. *Id.*, DE 134. On January 6, 2023, Caballero filed a response to the United States' reply brief. *Id.*, DE 135.

"eliminate Congress's careful application of TRIA to state sponsors of terrorism . . . . Where a state is not designated as a state sponsor of terrorism, TRIA does not authorize the attachment of a foreign state's assets to satisfy a judgment against the foreign state." *Id.* at 33; *id.* at 35 (recommending a "narrow construction" of *Kirschenbaum*, as it would be problematic to extend TRIA to "foreign states under the FSIA that are not designated as state sponsors of terrorism").

A narrow interpretation of *Kirschenbaum* also makes sense in light of other precedent under TRIA. Movants have not found any case where TRIA was interpreted in a manner to allow a judgment creditor to execute on the assets of a foreign state that the Executive Branch had not designated a state sponsor of terrorism. *See, e.g.*, *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d. Cir. 2010) (plaintiffs possessed a judgment against Iran, a designated state sponsor of terrorism); *Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 431 (D.D.C. 2012) (same). Here, Venezuela has never been designated by the United States as a state sponsor of terrorism."

In short, because there is no exception to FSIA jurisdictional immunity in this case, the Court lacks subject matter jurisdiction in this proceeding as it relates to movants. As stated above, section 1330 provides subject matter jurisdiction against foreign states and their agencies or instrumentalities, but only if the foreign state is not entitled to immunity under Sections 1605-1607 of the FSIA. Because Petrocedeño and the other entities joining this motion are immune, the Court lacks subject matter jurisdiction.

For these reasons, the previous *ex parte* Orders entered against Petrocedeño and the other movants declaring them to be an "agency or instrumentality" of a former terrorist organization should be vacated, and the Writ quashed. *See Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Sovereign immunity is a jurisdictional bar[.]"); *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill*

*Music Pub. Inc.*, 99 F. Supp. 2d 450, 455 (S.D.N.Y. 2000) ("A judgment is void and subject to vacatur if the court lacks subject matter jurisdiction.").

**V.    The Court lacks jurisdiction over the purported assets of Petrocedeño and the other moving entities because Caballero fails to meet the requirements of TRIA.**

Caballero has not established (1) that the assets at issue are blocked assets of the FARC or Petrocedeño, or any of the other movants, or (2) that Petrocedeño or any other movant is an "agency or instrumentality" of the FARC, a terrorist party. *Kirschenbaum*, 830 F.3d at 131.

**A.  Caballero has not proven that Petrocedeño, or any of the other movants, or the FARC own the blocked assets.**

As a threshold matter, Caballero cannot use TRIA to execute on "blocked assets" unless the FARC—the alleged terrorist party—has some kind of ownership or beneficial interest in the assets. This proposition is supported by the plain language of TRIA itself. *See* TRIA § 201(a) (allowing execution or attachment in aid of execution on "the blocked assets of the terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) ….") (emphasis added).Also, even if TRIA authorizes execution of assets owned by persons other than a terrorist party, Caballero cannot execute on Petrocedeño's or the other movants' purported assets because they are not blocked pursuant to the same executive action directed at the FARC.

**B.  Caballero has not demonstrated that Petrocedeño or any other movant is an agency or instrumentality of the FARC as of July 2020.**

To prove Petrocedeño or any of the other movants is an agency or instrumentality of the FARC, Caballero must show that it "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by a terrorist party." *Kirschenbaum*, 830 F.3d at 135. The Second Circuit left open the question of whether Caballero must "show that [Petrocedeño] knew, or reasonably should have known, that they were functioning for, providing

13

material services on behalf of, or being owned, controlled, or directed by the terrorist party." *Id.* at 136.

Significantly, Caballero must demonstrate that each entity whose assets which it wishes to seize was an agency or instrumentality of the FARC in July 2020—*the time when Caballero filed the instant action* seeking writs of execution against Petrocedeño's alleged assets. *See id.* at 135–36 ("[I]nsofar as Plaintiffs contend that Alavi itself was sufficiently owned, controlled, or directed by Iran to render it an agency or instrumentality of a terrorist party under the TRIA, questions of fact exist as to whether Alavi was so owned, controlled, or directed at the time Plaintiffs' complaints were filed."); *see also Harrison v. Republic of Sudan*, No. 13-cv-3127, 2017 WL 946422, at *4 (S.D.N.Y. Feb. 10, 2017) ("Because jurisdiction depends upon the state of things at the time the action is brought, an entity's agency or instrumentality status under the FSIA is determined at the time of the filing of the complaint. . . . The same applies to the TRIA.") (citing *Kirschenbaum*, 830 F.3d at 126, 136).

The caselaw clearly requires Caballero to put forth specific evidence connecting Petrocedeño and each of the other moving entities to the FARC. Instead, Caballero relies on two *ex parte* orders from the Southern District of Florida finding that Petrocedeño is an agency or instrumentality of the FARC. *See* DE 9 at 12–13. However, those orders, just like the Court's Orders here, were based solely on the allegations of the plaintiffs without giving Petrocedeño or any of the other moving entities the opportunity to present legal argument or evidence. *See* DE 6-1, 6-2.[7]

---

[7] Based on a review of the publicly-available docket entries, Caballero does not appear to rely on the declarations of his purported expert, John Robert McBrien, to support his argument that Petrocedeño is an agency and instrumentality of the FARC. However, to the extent that Caballero does rely on McBrien's declarations for this finding, Petrocedeño reserves the right to assert additional arguments challenging McBrien's declarations with respect to Petrocedeño.

In those cases, the plaintiffs submitted *ex parte* motions to obtain writs of garnishment but never properly served Petrocedeño with process pursuant to Rule 4 in compliance with the Hague Service Convention to which the United States and Venezuela are parties. In acceding to the Hague Service Convention, however, Venezuela objected to service of process and judicial documents by mail and required all documents be served with Spanish translation. *See* Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention; *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017) ("[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.").

This notwithstanding, plaintiffs in both cases sought to serve Petrocedeño with *ex parte* writs of execution in accordance with Florida's garnishment statute (Fla. Stat. § 77.041) by mailing and emailing the motion and writs to counsel without translation. *See Doe v. FARC*, No. 10-cv-21571 (S.D. Fla.) (DE 255); *Stansell v. FARC*, No. 19-cv-20896 (S.D. Fla.) (DE 488).

When Petrocedeño did not appear, the courts issued orders for turnover of the assets at issue—based solely on the plaintiffs' *ex parte* and unrebutted allegations. These orders should accordingly be given no weight.

Caballero must show that Petrocedeño and each entity itself was an agency or instrumentality of the FARC as of July 2020. This requires evidence of specific activity by the entity on behalf of the FARC as of that date. But movants are not aware of any evidence submitted by Caballero linking Petrocedeño (or even PDVSA or any of the other movants) to the FARC at the relevant time. On the contrary, the declarations of Petrocedeño, PDVSA, and David Falt, demonstrate that Petrocedeño is not an agency or instrumentality of the FARC. *See* Exhibits 2 and 3.

15

Furthermore, in *Doe v. The Deposit Guarantee Fund,* No. 23-1158 (2d. Cir. Aug. 10, 2023), the Second Circuit is considering whether there is a temporal limitation with respect to an agency and instrumentality determination (see Exhibit 4). For that reason, Caballero's action in *Caballero v. FARC*, No. 20-cv-1939 (D. Conn.), is stayed. This Court should likewise enter a stay here.

## C. The FARC is not a "terrorist party."

On November 30, 2021, the U.S. Department of State removed the FARC's designation as a "Foreign Terrorist Organization" and a "Specially Designated Global Terrorist." *See* Press Statement, Revocation of the Terrorist Designations of the Revolutionary Armed Forces of Colombia (FARC) and Additional Terrorist Designations, U.S. Dep't of State, Nov. 30, 2021, https://2021-2025.state.gov/revocation-of-the-terrorist-designations-of-the-revolutionary-armed-forces-of-colombia-farc-and-additional-terrorist-designations/ (accessed February 18, 2025). The State Department recognized that the FARC "formally dissolved and disarmed" following a 2016 Peace Accord with the Colombian government. In that regard, the FARC "no longer exists as a unified organization that engages in terrorism or terrorist activity or has the capability or intent to do so." *Id.*

Because the FARC is no longer a "terrorist party," this Court lacks jurisdiction under TRIA to order the turnover of assets of an alleged agency or instrumentality of the FARC. In *Ruth Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, Judge Cote held the blocked assets of the Democratic Republic of North Korea (the "DPRK") could not be seized under TRIA because, among other things, the DPRK was no longer a terrorist party at the time the court entered a final order to turn over the assets. 867 F. Supp. 2d 389, 396 (S.D.N.Y. 2011) (vacated in part on other grounds by *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014)). Interpreting the plain language of TRIA, the court reasoned: "The language of [TRIA § 201]

presumes that the 'terrorist party' against which a petitioner 'has obtained a judgment' is still a 'terrorist party' at the time its blocked assets 'shall' be subject to attachment." *Id.* at 395-96.

Moreover, "the Supreme Court has determined that this passage of TRIA § 201 speaks as of the date when a court rules on an application for turnover, not the date when a judgment creditor's claim arises." *Id.* at 396 (emphasis added). "For these reasons, the most natural reading of TRIA § 201(a) is that is requires a judgment debtor to be a 'terrorist party' both at the time of the underlying judgment and at the time of the enforcement proceeding." *Id.* (emphasis added). Judge Cote explained:

> This interpretation also makes intuitive sense. Prior to any enforcement proceeding, the parties engage in private litigation. The government intervenes directly in these private proceedings through TRIA only at the moment of enforcement, when a party seeks special access to the "the blocked assets of [a] terrorist party" to satisfy a judgment. The impact of TRIA thus occurs at the moment of enforcement, not the moment of judgment in the underlying action or the bringing of an initial claim.

*Id.* at 396 (emphasis added).

Here, Caballero has invoked TRIA to collect on his judgment against the FARC. Accordingly, because the FARC is no longer a "terrorist party," and in light of *Calderon-Cardona*, the Court lacks jurisdiction under TRIA to enforce Plaintiffs' judgment against the FARC.

## VI.    **This proceeding should be stayed pending *Havlish*.**

Finally, like in *Stansell/Pescatore*, this proceeding should be stayed pending the disposition of *Havlish*, in which the Second Circuit will determine whether judgment creditors can proceed under TRIA when they do not have an underlying judgment against a foreign state.

In *Havlish*, the Second Circuit is considering the appeal of Judge Daniels' ruling that TRIA does <u>not</u> waive the jurisdiction and execution immunities enjoyed by foreign states and their agencies and instrumentalities under the Foreign Sovereign Immunities Act ("FSIA") when the judgment creditor does not have an underlying judgment against that foreign state. *See In re:*

*Terrorist Attacks on September 11, 2001*, 657 F. Supp. 3d 311, 329–32 (S.D.N.Y. 2023). As in *Havlish*, where the judgment creditors have a judgment against the Taliban but not against the Republic of Afghanistan, the judgment creditor here has a judgment against the FARC but not against the Republic of Venezuela, the ultimate owner of Petrocedeño. Due to the pendency of *Havlish*, both the Western District of New York and the Southern District of New York, in TRIA proceedings commenced by various judgment creditors (including plaintiff Caballero), have stayed actions against the Venezuelan Ministry of Finance and various entities related to PDVSA. *See Caballero v. FARC*, No. 1:20-mc-00040 (W.D.N.Y.), DE 65 at ¶ 4; *Stansell* DE 534, 551; *Pescatore* DE 170, 172.

In *Stansell*, Caballero agreed to a stay of his collection efforts against the Venezuelan Ministry of Finance (*Stansell* DE 534), which has since been extended to Petrocedeño. *See* Exhibit 3 (*Stansell* DE 551) ("[I]t is apparent that the Second Circuit's upcoming ruling in *Havlish* will likely have a significant impact on the landscape of fact and legal issues facing the parties and this Court, and the interests of judicial economy will be best served by staying the PDVSA/BANDES subsidiary interpleaders until after *Havlish* is decided.").

Most of the assets at issue here are also being litigated in *Stansell/Pescatore*, where Caballero is named as a third-party defendant and an adverse claimant. Indeed, on February 23, 2021, Garnishees Citibank, N.A., Chase, and Sumitomo filed a notice of relatedness and requested that the cases be assigned to a single judge. DE 34; *Stansell* DE 185; *Pescatore* DE 95. On March 16, 2021, Judge Schofield (presiding over *Stansell*) granted the Garnishees' request in part and accepted that the *Stansell/Pescatore* actions were related and reassigned *Pescatore* to herself. *See Stansell* DE 194. To proceed against the same assets at issue in *Stansell/Pescatore* while those

cases are stayed is not in the interests of judicial economy and could prejudice the parties. As such, this case should be stayed pending *Havlish*.

## **CONCLUSION**

Petrocedeño and the other moving entities respectfully request that the Court (i) vacate its Orders dated March 9, 2021 (DE 51), January 13, 2023 (DE 67 and DE 68), May 4, 2022 (DE 92), and December 9, 2024 (DE 118);  (ii) quash the Writ issued to JPMorgan Chase Bank, N.A. on December 9, 2024; and (iii) stay this proceeding pending the Second Circuit's disposition in *Havlish v. Bin-Ladin*, No. 23-258 (2d Cir. Feb. 28, 2023) and *Doe v. The Deposit Guarantee Fund,* No. 23-1158 (2d. Cir. Aug. 10, 2023).

Dated:  February 18, 2025

> Respectfully submitted,
>
> KELLNER HERLIHY GETTY & FRIEDMAN, LLP
>
> by_____
>      Douglas A. Kellner
> 470 Park Avenue South—7th Floor
> New York, NY 10016-6951
> Telephone:  (212) 889-2121
> Email:  dak@khgflaw.com
>
> *Attorneys for Petrocedeño, S.A., Petróleos de Venezuela, S.A. , Ministerio del Poder Popular de Economia y Finanzas (Venezuela's Ministry of Finance), Banco de Venezuela S.A., Banco Universal, Banco Central de Venezuela, Banco Bandes Uruguay SA, Aceites y Solventes Venezolanos Vassa, S.A., PDV Marina, S.A., Venfleet Asphalt, Ltd., Venfleet Products, Ltd., Venfleet, Ltd., and Petro San Felix, S.A (the "Venezuelan Third Parties")*