**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONIO CABALLERO,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>FUERZAS ARMADAS<br>REVOLUCIONARIAS DE COLOMBIA<br>a/k/a FARC-EP a/k/a REVOLUTIONARY<br>ARMED FORCES OF COLOMBIA; and<br>THE NORTE DE VALLE CARTEL,<br><br>　　　*Defendants*. | Case No. 20-mc-00249 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE VENEZUELAN NON-PARTIES' MOTION TO VACATE ORDERS,**
<u>**QUASH WRITS OF EXECUTION, AND DISMISS ACTION WITH PREJUDICE**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

PRELIMINARY STATEMENT ............................................................................................3

BACKGROUND ....................................................................................................................6

ARGUMENT .......................................................................................................................10

I.      THE COURT LACKED AN INDEPENDENT BASIS FOR JURISDICTION TO
        HOLD THE VENEZUELAN NON-PARTIES LIABLE FOR PLAINTIFF'S DEFAULT
        ATA JUDGMENT ...................................................................................................10

II.     THIS COURT LACKED PERSONAL JURISDICTION OVER THE VENEZUELAN
        NON-PARTIES .......................................................................................................13

III.    THE *EX PARTE* ORDERS AND WRITS DENIED THE VENEZUELAN NON-
        PARTIES DUE PROCESS AND ARE VOID FOR INEFFECTIVE SERVICE .............14

IV.     TRIA DOES NOT APPLY TO THE VENEZUELAN NON-PARTIES AS A MATTER
        OF LAW ..................................................................................................................17

        A.     TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of
               Terrorism Only...............................................................................................17

        B.     Plaintiff Failed To Show That The Venezuelan Non-Parties Are "Agencies Or
               Instrumentalities" Of The FARC ...................................................................20

        C.     Plaintiff Failed To Show The Blocked Assets Are Assets "Of" The FARC .........25

V.      THE UNDERLYING DEFAULT JUDGMENT AGAINST THE FARC IS VOID FOR
        LACK OF JURISDICTION ....................................................................................25

CONCLUSION ....................................................................................................................28

CERTIFICATE OF WORD COUNT ..................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrams v. Interco Inc.*,
   719 F.2d 23 (2d Cir. 1983)........................................................................................................26

*Argentine Republic v. Amerada Hess Shipping Corporation*,
   488 U.S. 428 (1989)..................................................................................................................11

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013)......................................................................................................28

*Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Company*,
   581 U.S. 170 (2017)..................................................................................................................11

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2014 Fla. Cir. LEXIS 51243 (Fla. Cir. Ct. May. 2, 2014)........................................................27

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2020 N.Y. Misc. LEXIS 10368 (N.Y. Sup. Ct. Dec. 4, 2020) ................................................24

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2020 WL 7481302 (S.D. Fla. May 20, 2020) ......................................................................6, 27

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2021 WL 1884110 (W.D.N.Y. May 11, 2021)........................................................................21

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2023 WL 125240 (S.D. Tex. Jan. 6, 2023)..............................................................................16

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2024 WL 2976712 (D. Conn. June 13, 2024)...........................................................................25

*Cameron v. City of New York*,
   598 F.3d 50 (2d Cir. 2010)........................................................................................................24

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011)......................................................................................................12

*Covington Industries, Inc. v. Resintex, A.G.*,
   629 F.2d 730 (2d Cir. 1980)......................................................................................................14

*Does v. Taliban*,
   101 F.4th 1 (D.C. Cir. 2024).....................................................................................................12

*Dole Food Company v. Patrickson,*
   538 U.S. 468 (2003) ....................................................................................................20

*Epperson v. Entertainment Express, Inc.,*
   242 F.3d 100 (2d Cir. 2001) ......................................................................................11

*Friedman v. Bloomberg L.P.,*
   884 F.3d 83 (2d Cir. 2017) ........................................................................................13

*Frontera Resources Azerbaijan Corporation v. State Oil Company of Azerbaijan Republic,*
   582 F.3d 393 (2d Cir. 2009) ......................................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011) ....................................................................................................14

*Grogan v. Garner,*
   498 U.S. 279 (1991) ....................................................................................................21

*In re Terrorist Attacks on Sept. 11, 2001,*
   657 F. Supp. 3d 311 (S.D.N.Y. 2023) ................................................................21, 25

*Jesner v. Arab Bank, PLC,*
   584 U.S. 241 (2018) ....................................................................................................27

*Kim v. Democratic People's Republic of Korea,*
   774 F.3d 1044 (D.C. Cir. 2014) ................................................................................21

*Kiobel v. Royal Dutch Petroleum Company,*
   621 F.3d 111 (2d Cir. 2010) ......................................................................................24

*Kiobel v. Royal Dutch Petroleum Company,*
   569 U.S. 108 (2013) ....................................................................................................27

*Kirschenbaum v. 650 Fifth Avenue,*
   830 F.3d 107 (2d Cir. 2016) ................................................................................17, 19

*Liberty Mutual Insurance Company v. Rotches Pork Packers, Inc.,*
   969 F.2d 1384 (2d Cir. 1992) ....................................................................................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
   673 F.3d 50 (2d Cir. 2012) ........................................................................................14

*Marvel Characters, Inc. v. Kirby,*
   726 F.3d 119 (2d Cir. 2013) ......................................................................................23

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
   863 F.3d 96 (2d Cir. 2017) ........................................................................................13

*Montefiore Medical Center v. American Protection Insurance Company*,
  2003 U.S. Dist. LEXIS 7986 (S.D.N.Y. May 14, 2003)........................................................23

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999).........................................................................................................15, 16

*Peacock v. Thomas*,
  516 U.S. 349 (1996)................................................................................................................11

*Republic of Sudan v. Harrison*,
  587 U.S. 1 (2019).............................................................................................................15, 16

*Robers v. United States*,
  572 U.S. 639 (2014)...............................................................................................................17

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*,
  989 F.2d 572 (2d Cir. 1993)...................................................................................................13

*Sisso v. Islamic Republic of Iran*,
  2007 WL 2007582 (D.D.C. July 5, 2007)..............................................................................26

*Stansell v. Revolutionary Armed Forces of Colombia*,
  771 F.3d 713 (11th Cir. 2014) ........................................................................................17, 24

*Trustees of the United Plant & Production Workers Local 175 Benefits Fund v. Mana Construction Group*,
  2021 U.S. Dist. LEXIS 143024 (E.D.N.Y. July 30, 2021)....................................................15

*United States v. Garcia*,
  413 F.3d 201 (2d Cir. 2005)...................................................................................................23

*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*,
  946 F.3d 120 (2d Cir. 2019)...................................................................................................12

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)................................................................................................................15

*Waldman v. Palestine Liberation Organization*,
  835 F.3d 317 (2d Cir. 2016)...................................................................................................14

*Water Splash, Inc. v. Menon*,
  581 U.S. 271 (2017)................................................................................................................16

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  576 U.S. 1 (2015)....................................................................................................................21

# STATUTES AND RULES

18 U.S.C. § 2333 ................................................................................................1, 6, 7, 26

28 U.S.C. § 517 ...........................................................................................................4

28 U.S.C. § 1330 ...........................................................................................13, 15, 19

28 U.S.C. § 1350 .....................................................................................................6, 27

28 U.S.C. § 1603 ...................................................................................4, 5, 17, 19

28 U.S.C. § 1604 .................................................................................................4, 11, 12

28 U.S.C. § 1605A .....................................................................................12, 18, 19

28 U.S.C. § 1608 ...........................................................................5, 13, 14, 15

Fed. R. Civ. P. 4 ..................................................................................................5, 16

Fed. R. Evid. 402 .........................................................................................................23

Fed. R. Evid. 602 .........................................................................................................23

Fed. R. Evid. 701 .........................................................................................................23

Fed. R. Evid. 702 .........................................................................................................23

Fed. R. Evid. 801 .........................................................................................................23

Fed. R. Evid. 802 .........................................................................................................23

Fed. R. Evid. 805 .........................................................................................................23

# TREATIES

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
    Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ...........................................5, 16

# MISCELLANEOUS

6 Am. Jur. 2d (2025) .....................................................................................................20

137 Cong. Rec. 8143 (1991) .........................................................................................26

148 Cong. Rec. 10312, 10392, 23122 (2002) ..............................................................18

Brief for the United States of America,
    *In re 650 Fifth Avenue and Related Properties*, No. 17-3258 (2d Cir. Aug. 31, 2018) ..........25

H.R. 3210, 107th Cong. (2001)..........................................................................................19

S. 2134, 107th Cong. (2002)............................................................................................19

Statement of Interest of the United States of America,
    *Havlish v. Bin-Laden*, No. 03-cv-9848 (S.D.N.Y. Feb. 11, 2022)..........................................18

Non-Party Respondents Ministerio del Poder Popular de Economia y Finanzas de la República Bolivariana de Venezuela ("Ministry of Finance"), Petróleos de Venezuela, S.A. ("PDVSA"), Petrocedeño, S.A., Venezuelan Heavy Industries C.A., Aceites y Solventes Venezolanos Vassa, S.A., Petro San Felix, S.A.,[1] Petrowarao, S.A., PDV Marina, S.A., Venfleet Ltd., Venfleet Asphalt Ltd., and Venfleet Products Ltd. (collectively, "Venezuelan Non-Parties") hereby move under Rules 12(b)(1), (2), and (4)-(7), 12(h)(3), 54(b), 60(b)(4), and 69(a)(1) of the Federal Rules of Civil Procedure to (1) vacate orders (ECF 51, 52, 67, 68, 92, 118); (2) quash all writs issued pursuant thereto; and (3) dismiss this action as to their assets with prejudice.

## **INTRODUCTION**

Plaintiff Antonio Caballero, the victim of heinous acts of terrorism perpetrated against his family by the defunct Colombian narco-terrorist organization Fuerzas Armadas Revolucionarias de Colombia ("FARC"), initiated this action to enforce his default Anti-Terrorism Act ("ATA") judgment against the FARC. Plaintiff seeks to satisfy his default judgment by executing against the assets of numerous non-parties that are part of or owned by the Bolivarian Republic of Venezuela as though they were liable for the ATA judgment on the purported basis that their assets were executable under the Terrorism Risk Insurance Act ("TRIA"). Those non-parties include the Republic's Ministry of Finance, PDVSA — Venezuela's wholly owned national oil company and an agency or instrumentality of a foreign state — and several of PDVSA's subsidiaries. Plaintiff's enforcement actions, however, are marred by jurisdictional and substantive infirmities and fundamental due process violations.

As a threshold matter, Plaintiff has not pursued his enforcement action in this case for several years because he was interpleaded in 2021 in two functionally identical actions both

---

[1] Plaintiff's motions refer to an entity "Petroanzoategui S.A.," which is the former name of (and same entity as) Petro San Felix, the Non-Party Respondent now appearing in this action. *See, e.g.*, ECF 24, 29.

pending before Judge Lorna G. Schofield and Magistrate Judge Sarah Netburn in this same Court.
*See Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y.) ("*Stansell*") and *Pescatore v. Pineda*, No. 18-
mc-545 (S.D.N.Y.) ("*Pescatore*").    In those actions, other judgment creditors of the FARC
obtained writs of execution upon many of the same accounts purportedly owned by the Venezuelan
Non-Parties and held by garnishees Citibank N.A. and Sumitomo Mitsui Banking Corporation
("Sumitomo").    The garnishees then filed interpleader complaints naming the *Stansell* and
*Pescatore* plaintiffs, along with Plaintiff Caballero and many of the Venezuelan Non-Parties as
third-party defendants.    As a result, Plaintiff has been litigating his purported claim to the
Venezuelan Non-Parties' assets in those proceedings and has never sought turnover of those assets
in this action.

In May 2024, the court stayed *Stansell* and *Pescatore* pending a decision by the Second
Circuit in *Havlish v. Bin-Laden*, No. 23-258, because that decision could have a material impact
on the pending motions to vacate orders and quash writs filed by certain of the Venezuelan Non-
Parties there.    This Motion, although involving the same grounds for vacatur as the pending
motions in *Stansell* and *Pescatore*, is necessitated by two recent developments: (1) Plaintiff's
recent attempt to use a 2021 *ex parte* liability determination to attach new funds belonging to one
of the Venezuelan Non-Parties, Petrocedeño, which is also the subject of active litigation in
*Stansell v. FARC*, No. 19-cv-20896 (S.D. Fla.) and *Osio v. Maduro Moros*, No. 21-cv-20706 (S.D.
Fla.); and (2) the improper appearance of unauthorized counsel who purports to represent
Petrocedeño and other non-party Venezuelan entities, but who is instructed by representatives of
the illegitimate and unrecognized regime of Nicolás Maduro.    While this Motion is necessitated to
preserve and protect their rights, the Venezuelan Non-Parties respectfully submit that the Court
hold any adjudication of this Motion in abeyance pending a decision in *Stansell* and *Pescatore* to

avoid the risk of inconsistent decisions in the same Court.

Moreover, as explained in the simultaneously-filed letter requesting a teleconference for a proposed motion to strike, this Motion is the only Motion to Vacate authorized by the Venezuelan Non-Parties.  Mr. Douglas A. Kellner is not authorized to appear on behalf of the Venezuelan Non-Parties in this action nor file a motion to vacate on their behalf.

## PRELIMINARY STATEMENT

None of the Venezuelan Non-Parties were defendants in Plaintiff's underlying action against the FARC; nor were they parties to the default judgment Plaintiff ultimately obtained against the FARC.  Yet without having served effective process or established this Court's jurisdiction, Plaintiff obtained *ex parte* and under seal three separate orders in 2021 holding that the Venezuelan Non-Parties are purportedly "agents or instrumentalities" of the FARC, and as such, their assets are purportedly available to satisfy Plaintiff's default judgment under TRIA.  This Court made those liability determinations based on Plaintiff's *ex parte* submissions that were procedurally and substantively deficient in numerous material ways.  Plaintiff then used those liability determinations to obtain additional writs as to assets purportedly of PDVSA and Petrocedeño.  At no point did Plaintiff ever attempt to notify, much less serve, any of the Venezuelan Non-Parties affected by his writs at that time.

Nearly four years after obtaining the *ex parte* liability determinations, Plaintiff used the determination as to Petrocedeño to obtain yet another order authorizing a writ upon Petrocedeño's assets held by JP Morgan Chase Bank ("JPMC").  For the first time, however, Plaintiff purported to provide notice of the writ by mailing it to undersigned counsel.

Although such method of service was defective as to Petrocedeño (and Plaintiff still has not attempted to serve the remaining Venezuelan Non-Parties or to serve Petrocedeño properly), the Venezuelan Non-Parties appear, without waiving any defenses, including as to service, to

vacate and quash all *ex parte* liability determinations and writs entered as to them and their assets. Many of the grounds for vacatur stated below bear directly on U.S.-foreign policy interests. Indeed, the United States has already submitted a Statement of Interest agreeing with many of the grounds asserted by PDVSA and its subsidiaries in an almost identical case in the Western District of New York brought by the same Plaintiff here. *See, e.g.*, Ex. 1, U.S. Br., *Caballero v. FARC*, No. 20-mc-40 (W.D.N.Y.), ECF 125 ("US SoI").[2] This Court should adopt the views of the United States in that case. It may also invite the United States to express its views on any other matter. *See* 28 U.S.C. § 517.

*First*, under binding U.S. Supreme Court precedent, a judgment creditor's attempt to shift liability for an existing federal judgment onto a new party is a new action for which the judgment creditor must establish an independent basis for jurisdiction. Plaintiff failed to do so. And because the Ministry of Finance is a "political subdivision" of a foreign state and PDVSA is an "agency or instrumentality of a foreign state," the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1603(a)-(b), 1604, provides the sole basis for establishing jurisdiction over the Ministry of Finance and PDVSA and their property. As the United States has opined in support of PDVSA, the FSIA's comprehensive framework does not cease to apply to the Ministry of Finance and PDVSA because Plaintiff has invoked TRIA. US SoI 12-17. In particular, TRIA does not provide an exception to sovereign immunity where the plaintiff does not hold a judgment against a designated state sponsor of terrorism. *Id.* at 12. Indeed, TRIA merely extends post-judgment exceptions to attachment and execution immunity where a plaintiff has *already* overcome the jurisdictional immunity of a state sponsor of terrorism. *Id.* Venezuela has never been designated a state sponsor or terrorism nor, in any event, does Plaintiff hold a judgment against it. Plaintiff

---

[2] All citations to "Exhibits" refer to the exhibits to the Declaration of Claire A. DeLelle, filed herewith.

thus failed to establish an exception to the Ministry of Finance's and PDVSA's presumptive immunity under the FSIA.

*Second*, Plaintiff was required to establish this Court's personal jurisdiction over the Venezuelan Non-Parties and to serve them with process.  Plaintiff was required, but failed, to serve the Ministry of Finance and PDVSA under the FSIA's service requirements, which point to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361, or other available means under §§ 1608(a)-(b).  Plaintiff also was required, but failed, to serve the PDVSA subsidiaries in compliance with Rule 4 of the Federal Rules of Civil Procedure, which also points to the Hague Service Convention.  Plaintiff also failed to establish that the Court's exercise of jurisdiction comports with due process.

*Third*, Plaintiff has not established, and cannot establish, that the Venezuelan Non-Parties are "agencies or instrumentalities" of the FARC.  In particular, the legal term of art, "agency or instrumentality," in TRIA, when invoked against a foreign state and its agencies or instrumentalities, should be given the same meaning as that term in § 1603(b) of the FSIA.

Notwithstanding the above, Plaintiff also failed to: (1) prove that the Venezuelan Non-Parties are "agencies or instrumentalities" of the FARC under TRIA; (2) establish that the assets are those "of" a terrorist party, i.e., the FARC owns the assets; or (3) show that the Venezuelan Non-Parties' assets, which the United States protectively blocked, are available to satisfy judgments against the FARC.

*Fourth*, Plaintiff's underlying default judgment is void for lack of subject-matter jurisdiction and, therefore, the Court lacks jurisdiction over these enforcement proceedings.

For these reasons, the Venezuelan Non-Parties respectfully request the Court vacate the

orders, quash the writs, and dismiss this action as to their assets with prejudice.

## BACKGROUND

### A.    The Florida State Default Judgment

In December 2012, Plaintiff commenced the first of two actions in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, *Caballero v. FARC*, No. 12-048803, seeking damages against the FARC and other defendants for injuries sustained from defendants' kidnapping, torture, and killing of his father. *See* Ex. 2 ¶¶ 1, 80. When he filed the operative complaint in March 2013, Plaintiff was a Colombian citizen and resident alien of the United States. *Id.* ¶ 2. Plaintiff alleged claims under the Alien Tort Statute ("ATS"). *Id.* ¶¶ 90-172. None of the defendants appeared, and a default was entered. *See* Ex. 3. In November 2014, the court entered a final default judgment, holding the FARC and other defendants liable for over $45 million, plus trebling. *See* Ex. 4.

### B.    The Florida Federal Default Judgment

Four years later, after becoming a naturalized U.S. citizen, Plaintiff initiated a federal action against the FARC. *Caballero v. FARC*, 2020 WL 7481302, at *1 (S.D. Fla. May 20, 2020). Plaintiff sued under the ATA, 18 U.S.C. § 2333, based on the same allegations as his state court action. *Id.* In May 2020, the court found the FARC liable to Plaintiff, and entered final judgment against the FARC ("Default ATA Judgment"). *Id.* at *3, *7.

### C.    This Enforcement Action

On July 6, 2020, Plaintiff registered his Default ATA Judgment in this Court. *See* ECF 1. On November 25, 2020, Plaintiff moved *ex parte* and under seal for post-judgment writs of attachment against Petrocedeño's assets under TRIA on the purported basis that Petrocedeño is an "agent or instrumentality" of the FARC. ECF 6 at 2-3 (unsealed in ECF 48). Plaintiff requested the Court take judicial notice of an *ex parte* order in an unrelated action in the Southern District of

Florida, *see* Order, *Stansell*, No. 19-cv-20896, ECF 367 ("*Stansell* Order"), which, in turn, took judicial notice of *another ex parte* order from a different action, *see* Order, *Doe v. ELN*, No. 10-cv-21517 (S.D. Fla. June 5, 2020), ECF 258 ("*Doe* Order"), holding that Petrocedeño is an "agency or instrumentality" of the FARC.  ECF 6 at 3-4.  Plaintiff did not attempt to serve Petrocedeño.

On January 13, 2021, the Court, under seal, granted Plaintiff's motion ("January 2021 Petrocedeño Order") finding (1) subject-matter jurisdiction under the ATA and TRIA; (2) Petrocedeño is "an agent and instrumentality of the FARC;" and (3) Petrocedeño's assets are "blocked assets" executable under TRIA.  ECF 67 at 2 (unsealed in ECF 66).  The Court took judicial notice of the *Stansell* and *Doe* Orders, holding its determination was made "upon due and careful consideration" of both.  *Id.* at 1.  Plaintiff did not attempt to serve Petrocedeño with the order or ensuing writ.

On December 16, 2020, Plaintiff moved *ex parte* and under seal for a determination that PDVSA and entities owned "50 percent or more by [PDVSA]," including Petro San Felix, Petrowarao, and Venezuelan Heavy Industries, were "agent[s] and instrumentalit[ies]" of the FARC, and for writs against their assets held by Sumitomo.  ECF 9 (unsealed in ECF 48).  The motion was supported by sworn declarations of John Robert McBrien, former Associate Director for Global Targeting in the Office of Foreign Assets Control.  On January 13, 2021, the Court granted the motion under seal ("January 2021 PDVSA Order") and directed the Clerk to issue a writ upon the Sumitomo accounts.  ECF 68 (unsealed in ECF 66).  The motion, order, and writ were never served on PDVSA or these subsidiaries.

Plaintiff again moved *ex parte* and under seal for a determination that the Ministry of Finance and other PDVSA subsidiaries, PDV Marina, Aceites y Solventes Venezolanos Vassa,

Petro San Felix, Venfleet Asphalt, Venfleet Products, and Venfleet, were also "agents or instrumentalities" of the FARC. ECF 24, 29 (unsealed in ECF 48). The motion was supported by another *ex parte* liability determination against the same entities in the Western District of New York (which has now been vacated, *see infra* § D), and the McBrien Declarations. *See* ECF 24, 29. The Court granted the motion under seal on March 9, 2021 ("March 2021 Order"), directing the Clerk to issue a writ against the Citibank accounts. ECF 51 (unsealed in ECF 48). Plaintiff never served the motion, order, or writ on the Ministry of Finance or these PDVSA subsidiaries.

Relying on the January 2021 Petrocedeño Order, the January 2021 PDVSA Order, and the March 2021 Order (collectively, "A&I Orders"), this Court authorized additional writs upon assets of PDVSA and Petrocedeño. *See* ECF 52 (granting sealed *ex parte* motion for writ on purported PDVSA assets held by JPMC); ECF 92 (granting sealed *ex parte* motion for writ on purported Petrocedeño assets held by Sumitomo). Plaintiff's motion as to Petrocedeño (ECF 57) remains sealed, and the Venezuelan Non-Parties respectfully request the Court unseal that motion.

Nearly four years after obtaining the January 2021 Petrocedeño Order, on November 8, 2024, Plaintiff moved *ex parte* and under seal for a writ against Petrocedeño's assets held by JPMC. ECF 110 (unsealed in ECF 121). On December 9, 2024, the Court granted the motion and directed the Clerk to issue the writ against Petrocedeño's assets held by JPMC. ECF 118. Plaintiff never served that motion, order, or ensuing writ on Petrocedeño either.

### D. The *Caballero* W.D.N.Y. Enforcement Action

As relevant to this action, Plaintiff in his upstate New York action, *Caballero v. FARC*, No. 20-mc-40 ("*Caballero* W.D.N.Y."), obtained *ex parte* and under seal a writ against the same Citibank accounts at issue in this action held on behalf of the Ministry of Finance and certain of PDVSA's subsidiaries (PDV Marina, Aceites y Solventes Venezolanos Vassa, Petro San Felix, Venfleet Asphalt, Venfleet Products, and Venfleet) on the purported bases that each were "agents

or instrumentalities" of the FARC. *Caballero* W.D.N.Y., ECF 33; *see also* ECF 24 ¶ 7 (noting Plaintiff was seeking writs on same accounts in W.D.N.Y. "in an abundance of caution").

PDVSA and its subsidiaries appeared and, following briefing on the issue of authority of counsel, moved to vacate and to quash the writ. *Caballero* W.D.N.Y., ECF 85. At the court's invitation, the United States filed a Statement of Interest supporting PDVSA and its subsidiaries' material arguments warranting vacatur. *Caballero* W.D.N.Y., ECF 125.

Following the U.S. Statement of Interest and on the eve of oral argument on the motion to vacate, Plaintiff attempted to voluntarily dismiss the entire action without prejudice. *Caballero* W.D.N.Y., ECF 139. The court rejected this, but subsequently vacated the agency or instrumentality determination and writs without prejudice. *Caballero* W.D.N.Y., ECF 144. The court additionally held the case in abeyance pending the Second Circuit's decision in *Havlish*, No. 23-258. *Id.* Functionally, however, nothing remains of the Western District action except the registration of judgment.

### E.    The *Stansell* and *Pescatore* Enforcement Actions

In December 2020 and February 2021, the *Stansell* and *Pescatore* plaintiffs (collectively, "S&P Plaintiffs"), other judgment creditors of the FARC, obtained writs against the same assets of the Ministry of Finance and certain of PDVSA's subsidiaries present in this action. *Stansell*, ECF 111, 166; *Pescatore*, ECF 37, 85.

Each garnishee bank holding assets subject to multiple writs filed interpleader complaints, naming the S&P Plaintiffs, Plaintiff, and many of the Venezuelan Non-Parties as third-party defendants in the *Stansell* action. *Stansell*, ECF 227, 229, 234, 236, 238, 280. Because the *Stansell* and *Pescatore* actions were marked related and assigned to the same judge, the court ordered the interpleader complaints and related filings be filed "only on the *Stansell* docket." *Stansell*, ECF 214. The *Stansell* court declined to mark Plaintiff's action as related. *Stansell*, ECF 194. Because

Plaintiff's purported right to many of the accounts at issue in this action were being litigated in the *Stansell* and *Pescatore* actions, Plaintiff did not pursue enforcement in this action for several years.

In August 2021, many of the same PDVSA subsidiaries in this action moved to vacate the orders authorizing writs and to quash the writs in the *Stansell* and *Pescatore* actions. *Stansell*, ECF 344; *Pescatore*, ECF 122. The PDVSA subsidiaries there also moved to dismiss the interpleader complaints. *Stansell*, ECF 364. Both motions remain pending.

In August 2023, at Plaintiff's request, the *Stansell* and *Pescatore* court stayed the proceeding regarding the Ministry of Finance pending *Havlish*, No 23-258. *Stansell*, ECF 534; *Pescatore*, ECF 170. That stay was later extended to include the proceeding as to the PDVSA subsidiaries upon the S&P Plaintiffs' request. *Stansell*, ECF 551; *Pescatore*, ECF 172. Despite requesting the stay in the *Stansell* and *Pescatore* actions, Plaintiff reinvigorated his enforcement efforts in this action and sought the *ex parte* writ as to Petrocedeño's funds held by JPMC. ECF 110. Although the court in *Stansell* and *Pescatore* previously declined to deem this action as related to those actions, it did so before the Venezuelan Non-Parties had filed their motions to vacate in all three actions. Now that motions to vacate have been filed in all three actions and they are substantively identical, including because they concern many of the same parties and assets, the risk of inconsistent decisions by judges in the same court is clear. This Court should therefore hold resolution of this Motion in abeyance pending a decision in *Stansell* and *Pescatore*.

## **ARGUMENT**

### I.    THE COURT LACKED AN INDEPENDENT BASIS FOR JURISDICTION TO HOLD THE VENEZUELAN NON-PARTIES LIABLE FOR PLAINTIFF'S DEFAULT ATA JUDGMENT

Plaintiff's attempt to use TRIA to hold the Venezuelan Non-Parties liable for his Default ATA Judgment against the FARC "is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment." *Peacock v. Thomas*, 516 U.S.

10

349, 359 (1996) (holding court lacked ancillary jurisdiction over effort to enforce judgment against third party); *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 104 (2d Cir. 2001) (concluding efforts to collect judgments by shifting liability to a new party create independent controversy that does not fall within court's ancillary jurisdiction).   Thus, before attempting to enforce against the Venezuelan Non-Parties' assets, Plaintiff was required to initiate a new civil action and establish this Court's jurisdiction for an action against the Venezuelan Non-Parties.  *See Peacock*, 516 U.S. at 355 (holding "subsequent lawsuit" on existing federal judgment must have "independent basis for jurisdiction").   Plaintiff did not do so.   Plaintiff instead purported to initiate ancillary post-judgment proceedings to satisfy his Default ATA Judgment against the FARC under TRIA by executing against the assets of the Venezuelan Non-Parties, which were not parties to the Default ATA Judgment.  As a result, Plaintiff never alleged, much less established, an independent basis for this Court's subject-matter jurisdiction.

Further, as the United States explained, the FSIA "establishes the comprehensive and exclusive framework for obtaining and enforcing judgments against a foreign state in civil suits in U.S. courts." US SoI 4 (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-35 (1989)).  As such, the Ministry of Finance (a "political subdivision" of a foreign state) and PDVSA (an "agency or instrumentality of a foreign state") are "'immune from the jurisdiction' of federal and state courts except as provided by the exceptions to immunity" in the FSIA.  *Id.* (quoting 28 U.S.C. § 1604).  Plaintiff was thus required to bring an action against the Ministry of Finance and PDVSA based on an exception to their presumptive immunity under §§ 1605-1607 of the FSIA and "show (and not just arguably show)" that each element of the alleged exception applies — "a nonfrivolous argument to that effect is not sufficient."  *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017); *see* 28 U.S.C.

§ 1604.

Here, Plaintiff has not even addressed the Ministry of Finance's or PDVSA's immunity, let alone established an exception to such immunity.  Instead, Plaintiff asserted he had satisfied TRIA's requirements and was therefore entitled to attach and execute against the Ministry of Finance's and PDVSA's blocked assets to satisfy his Default ATA Judgment against the FARC. *See* ECF 9, 24, 29.  Plaintiff is wrong.  As the United States explained, "TRIA does *not* provide an independent grant of subject-matter jurisdiction over foreign states where jurisdiction has not already been established under the FSIA's exception to immunity for state sponsors of terrorism." US SoI 11 (emphasis in original); *accord Vera v. Argentaria*, 946 F.3d 120, 133 (2d Cir. 2019) (holding TRIA "provides for federal court jurisdiction over execution and attachment proceedings involving the assets of a foreign sovereign . . . only where 'a *valid* judgment has been entered' against the sovereign"); *Does v. Taliban*, 101 F.4th 1, 14 (D.C. Cir. 2024) (same).  Rather, TRIA "simply . . . expands the exceptions" for attachment and execution immunity and "with respect to foreign states, TRIA only expands exceptions to execution immunity where the FSIA's jurisdictional requirements have already been satisfied."  US SoI 11-12.  But Plaintiff has not obtained a judgment against Venezuela under § 1605A, nor could he, as Venezuela has never been designated as a state sponsor of terrorism.  *See* 28 U.S.C. § 1605A(a)(2)(A)(i); *Does*, 101 F.4th at 10.

Because Plaintiff failed to establish subject-matter jurisdiction, the A&I Orders, the additional orders authorizing the writs, and all writs issued pursuant thereto, are void and must be vacated.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011) (holding vacatur mandatory under Rule 60(b)(4) where rendering court "lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process"); *Mobil*

*Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 124 (2d Cir. 2017) (finding judgment void where court lacked jurisdiction under FSIA).

## II.    THIS COURT LACKED PERSONAL JURISDICTION OVER THE VENEZUELAN NON-PARTIES

Plaintiff would also have had to establish personal jurisdiction over the Venezuelan Non-Parties before attempting to hold them liable for his underlying default judgment against the FARC.  *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (holding plaintiffs bear the burden to establish personal jurisdiction as to defendant).  The United States agrees.  *See* US SoI 24-25.

Because the FSIA provides the exclusive basis for establishing personal jurisdiction over a foreign state (including their political subdivisions) and its "agencies and instrumentalities," Plaintiff must (but cannot) show that he (1) properly served the Ministry of Finance and PDVSA under §§ 1608(a)-(b) respectively; and (2) established an applicable exception to their jurisdictional immunity.  *See* 28 U.S.C. § 1330(b).  This Court lacks personal jurisdiction as to the Ministry of Finance and PDVSA because neither condition has been satisfied.  As explained, Plaintiff has failed to establish any exception to the Ministry of Finance's and PDVSA's sovereign immunity.  *See supra* § I.  And Plaintiff has never attempted to effect service on the Ministry of Finance or PDVSA.  *See infra* § III.

Moreover, Plaintiff was required to show that exercising personal jurisdiction over the Venezuelan Non-Parties comports with due process.[3]  *See Seetransport Wiking v. Navimpex*, 989 F.2d 572, 580 (2d Cir. 1993) ("[T]he FSIA cannot create personal jurisdiction where the

---

[3] The Venezuelan Non-Parties recognize the Second Circuit has held foreign states are not entitled to application of the constitutional minimum contacts test for establishing personal jurisdiction.  *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009).  However, that question is now before the Supreme Court, and the Venezuelan Non-Parties therefore preserve the issue.  *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, No. 23-1201.

Constitution forbids it."); *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 60 (2d Cir. 2012) (holding a court's exercise of personal jurisdiction "must comport with constitutional due process principles"). Due process requires that Plaintiff show that the Venezuelan Non-Parties possess "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (cleaned up). For forum contacts to support an "exercise [of] jurisdiction consistent with due process," a "substantial connection" must exist between the "defendant's suit-related conduct" and the forum. *Waldman v. PLO*, 835 F.3d 317, 335 (2d Cir. 2016) (cleaned up). And "[t]he relationship between the defendant and the forum 'must arise out of the contacts that the defendant *himself* creates with the forum.'" *Id.* (emphasis in original).

Plaintiff has not alleged *any* facts connecting the Ministry of Finance or PDVSA to the United States, much less New York. *See* ECF 9 at 8-10 (relying on McBrien declarations describing conduct of former Chávez and Maduro regimes in *Venezuela*); ECF 9-2. And as to the PDVSA subsidiaries, Plaintiff has not proffered *any* factual allegations, much less allegations sufficient to establish personal jurisdiction. *See* ECF 6 at 2-4; ECF 9 at 10-12; ECF 24 at 4-6; ECF 29 at 11-14. Because Plaintiff has not — and cannot — carry his burden of showing sufficient minimum contacts to support personal jurisdiction over the Venezuelan Non-Parties, this Court lacks personal jurisdiction, and the orders and ensuing writs are therefore void and must be vacated and quashed, and this action dismissed. *Covington Indus., Inc. v. Resintex, A.G.*, 629 F.2d 730, 733-35 (2d Cir. 1980) (affirming Rule 60(b)(4) vacatur of default judgment where rendering court lacked personal jurisdiction).

## III.   THE *EX PARTE* ORDERS AND WRITS DENIED THE VENEZUELAN NON-PARTIES DUE PROCESS AND ARE VOID FOR INEFFECTIVE SERVICE

Plaintiff's motions seeking to hold the Venezuelan Non-Parties liable for his Default ATA

14

Judgment do not substitute for service of the requisite summons and complaint. *See* 28 U.S.C. §§ 1330(b), 1608(b); *Trs. of the United Plant & Production Workers v. Mana Constr. Grp.*, 2021 U.S. Dist. LEXIS 143024, at *82 (E.D.N.Y. July 30, 2021) ("Failure to serve a summons constitutes a flagrant disregard of Rule 4 rendering service of process 'fatally defective.'") (collecting cases). Even if it had, Plaintiff *never* attempted to serve his motions for writs on the Venezuelan Non-Parties. However they were styled, Plaintiff's motions seeking to hold the Venezuelan Non-Parties liable for his Default ATA Judgment were the first judicial documents "legally sufficient to charge [the Venezuelan Non-Parties] with notice of [this] pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). Plaintiff was therefore required to serve them on the Venezuelan Non-Parties in accordance with applicable law governing service of process. *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons."). The United States fully supports this point. US SoI 24-29 (stating the FSIA's "service provisions . . . apply to post-judgment execution actions under section 201(a) of TRIA, at least where the foreign state was not the judgment debtor").

With respect to service on the Ministry of Finance and PDVSA, the FSIA provides exclusive, hierarchical procedures for service of process on foreign states (including their political subdivisions) and their "agencies or instrumentalities" that must be strictly followed. *See* 28 U.S.C. §§ 1608(a), (b); *see also Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019) (vacating default judgment based on improper service under FSIA). Because there is no "special arrangement for service," 28 U.S.C. §§ 1608(a)(1), (b)(1), Plaintiff was required to serve the Ministry of Finance and PDVSA via the Hague Service Convention, "an applicable international convention on service of judicial documents." *See id.* §§ 1608(a)(2), (b)(2). Plaintiff was also

15

required to serve the PDVSA subsidiaries, Venezuelan corporations, per Rules 4(h)(2) and (f)(1) of the Federal Rules of Civil Procedure, which also point to the Hague Service Convention. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies.") (cleaned up).

In acceding to the Hague Service Convention, Venezuela objected to service by mail and required all documents be served with Spanish translation. *See* Hague Service Convention, art. 10, Decl. 1 & 3 of Venezuela. Should difficulties arise in effecting service, Article 14 of the Convention additionally provides that service may be effected through diplomatic channels. Hague Service Convention, art. 14.

Instead, Plaintiff commenced proceedings *ex parte* and under seal. *See, e.g.*, ECF 6, 9, 24. Plaintiff has *never* attempted to serve majority of the Venezuelan Non-Parties with his motions, orders, or ensuing writs. And only after *four years* of litigation did Plaintiff first purport to serve Petrocedeño by mailing the JPMC writ to undersigned counsel, which plainly does not comport with the Hague Service Convention. Plaintiff has thus failed to properly serve the Venezuelan Non-Parties, thereby depriving them of their fundamental right to due process. *See Murphy Bros.*, 526 U.S. at 350 (holding service of process "is fundamental to any procedural imposition on a named defendant"). The orders must therefore be vacated and the writs quashed. *See Caballero v. FARC*, 2023 WL 125240, at *7 (S.D. Tex. Jan. 6, 2023) (quashing writs where *ex parte* "agency or instrumentality" TRIA order violated due process); *see also Harrison*, 587 U.S. at 18-19 (holding defects in service require vacatur even where defects were "highly technical" and "belatedly raised").

## IV.   TRIA DOES NOT APPLY TO THE VENEZUELAN NON-PARTIES AS A MATTER OF LAW

### A.   TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of Terrorism Only

Plaintiff misinterprets TRIA, conflating the phrase "agency or instrumentality" with the word "agent." *See, e.g.*, ECF 6 at 2; ECF 67; ECF 9 at 1, 7. But "agency or instrumentality" is a legal term of art specifically defined in § 1603(b) of the FSIA as any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country. 28 U.S.C. § 1603(b).

Section 1603 provides that the definitions contained in this section apply "[f]or purposes of this chapter," in which TRIA is codified as a note. Thus, as used in TRIA § 201(a), the term "agency or instrumentality" should be given the meaning ascribed to it under § 1603(b). *See generally Robers v. United States*, 572 U.S. 639, 644 (2014) ("[I]dentical words used in different parts of the same statute are . . . presumed to have the same meaning") (cleaned up).

Importantly, the United States has advocated *against* applying the broader definition of "agency or instrumentality" in TRIA adopted by this Court. *See* ECF 9 at 5, 7 (citing the court's "broad definition" of "agency or instrumentality" in *Stansell v. FARC*, 771 F.3d 713, 723 (11th Cir. 2014)); ECF 29 at 7-8, 10 (same); ECF 51 (granting ECF 24); ECF 68 (granting ECF 9). For example, in the *Caballero* W.D.N.Y. action, the United States expressed concerns that applying the Second Circuit's broad definition of "agency or instrumentality" in *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016), *abrogated by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018) (which adopted the Eleventh Circuit's unsupported definition advocated by Plaintiff), would "eliminate Congress's careful application of TRIA to state sponsors of terrorism" and

17

"would allow state assets to be attached under a broad range of circumstances . . . without any state sponsor of terrorism requirement, in contravention of FSIA's targeted approach and the specific language of TRIA that references that targeted approach."  US SoI 31-35, 33 n.10; *see also* U.S. Br. at 22, *Havlish v. Bin-Laden*, No. 03-cv-9848 (S.D.N.Y.), ECF 563 (noting definition of "agency or instrumentality" "may differ" when question is whether foreign state "can also act as an agency or instrumentality of a non-state entity").  Those concerns are important here, where Plaintiff seeks to execute on assets of PDVSA — an undisputed "agency or instrumentality" of Venezuela — its subsidiaries (solely by virtue of PDVSA's ownership), and Venezuela's Ministry of Finance, and Venezuela has not been designated a state sponsor of terrorism by the Executive Branch.

Indeed, TRIA's legislative history confirms that Congress intended the phrase "agency or instrumentality" in TRIA to mean the "agency or instrumentality of a foreign state" adjudged liable for a terrorism-related claim.  TRIA was enacted to permit terrorism victims who had successfully sued state sponsors of terrorism to satisfy their judgments against seized assets of "agencies or instrumentalities" of designated states without regard to their separate juridical status.  148 Cong. Rec. 10312 (2002); *id.* at 23122 (stating TRIA enacted "for purposes of enforcing a judgment against a terrorist state," and to clarify the law "does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities").  Notably, the term "agency or instrumentality" was added to the text of draft § 201(a) at the same time as its reference to the FSIA's exception to immunity for actions against state sponsors of terrorism (§ 1605(a)(7) (currently § 1605A)), signifying Congress intended for plaintiffs with judgments against state sponsors of terrorism to be able to satisfy their judgments against blocked property of that state's "agencies or instrumentalities."  *Compare* H.R. 3210 § 15(f), 107th Cong. (Nov. 26, 2001)

(omitting reference to "agencies or instrumentalities"), *with* H.R. 3210 § 15(e), 107th Cong. (Nov. 29, 2001) (including reference to § 1605(a)(7)).  Further, TRIA's final text was drafted by Senator Harkin and adopted wholesale from a bill that he explained "only applie[d] to 'terrorist states.'" 148 Cong. Rec. 10392 (2002) (statement of Sen. Harkin); *see* S. 2134, 107th Cong. (Apr. 16, 2002) ("To allow American victims of state sponsored terrorism to receive compensation from blocked assets of those states.").  Thus, the legislative history demonstrates the phrase "agency or instrumentality" in TRIA is the same as that used in § 1603(b) of the FSIA.  TRIA therefore does not apply to the Venezuelan Non-Parties' assets where Plaintiff does not hold a judgment against a state sponsor of terrorism and Venezuela has never been so designated.

The Venezuelan Non-Parties acknowledge the Second Circuit in *Kirschenbaum* articulated a "plain-meaning" definition of "agency or instrumentality" in TRIA that is inconsistent with the same term in § 1603(b).  But the Court did so in the context of a TRIA action seeking to attach property of a state sponsor of terrorism (Iran), the judgment debtor, where the plaintiffs had already obtained subject-matter jurisdiction with regard to Iran by way of §§ 1330(a), 1605A and 1605(a)(7).  830 F.3d at 123 n.8.  Moreover, "the Second Circuit did not address the question of when a foreign state, as defined under the FSIA, could be considered an agency or instrumentality of a non-state terrorist party under TRIA."  US SoI 35.  Thus, here, where Plaintiff seeks to execute upon assets of the Ministry of Finance, PDVSA, and the PDVSA subsidiaries (based solely on PDVSA's ownership), a "narrow application of 'agency or instrumentality'" "as defined under the FSIA" is appropriate here.  *Id.* at 34-35.  Nevertheless, the Venezuelan Non-Parties preserve all available arguments for further appellate review.  But even were *Kirschenbaum* controlling, Plaintiff has failed to establish the "agency or instrumentality" status of the Venezuelan Non-Parties even under *Kirschenbaum*'s test.

19

### B.    Plaintiff Failed To Show That The Venezuelan Non-Parties Are "Agencies Or Instrumentalities" Of The FARC

Plaintiff procured the A&I Orders with far-reaching consequences on an astoundingly bare evidentiary record. Indeed, Plaintiff's motions are devoid of *any* factual allegations supporting his contention that the Venezuelan Non-Parties are "agencies or instrumentalities" of the FARC. *See* ECF 6, 9, 24, 29.

As a threshold matter, Plaintiff has not and cannot put forward any allegations or evidence that the remaining Venezuelan Non-Parties were "agencies or instrumentalities" of the FARC *at the time Plaintiff began enforcement proceedings in November 2020* (Petrocedeño), *December 2020* (PDVSA and certain subsidiaries), and *February 2021* (Ministry of Finance and certain PDVSA subsidiaries). *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (holding agency-or-instrumentality status is determined "at the time the suit is filed"); 6 Am. Jur. 2d *Attachment & Garnishment* § 185 (2025) (stating validity of attachment depends on "the facts existing at the time the writ was issued"). Importantly, nearly all of Plaintiff's allegations attempting to connect PDVSA to the FARC concern PDVSA's purported conduct under the former Chávez and illegitimate Maduro regimes that long predates Plaintiff's commencement of this action and *decades* before the writs were issued. *See, e.g.*, ECF 9-2 ¶ 10 (describing Chávez and Maduro regimes use of PDVSA in 2005); ECF 9-3 at 12 (describing PDVSA's alleged actions in 2004).

Moreover, Plaintiff relies impermissibly on purported acts of the illegitimate Maduro regime and PDVSA (as usurped by Maduro) after January 2019, which cannot be imputed to the Ministry of Finance or PDVSA. *See* ECF 9-2 ¶¶ 15-16 (attributing 2020 acts of Maduro-appointed PDVSA leadership to PDVSA); *id.* ¶ 31 (drawing present-day conclusions about Ministry of Finance based on acts of Maduro-appointed Minister of Finance). In January 2019, the United

States ceased recognition of the Maduro regime and recognized the 2015 National Assembly and its former Interim Government as the only legitimate government of Venezuela. *See Caballero v. FARC*, 2021 WL 1884110, at *2-3 (W.D.N.Y. May 11, 2021) (describing transition of power in Venezuela). The U.S.-recognized Venezuelan government then established the Ad Hoc Board of PDVSA to exercise legal control over PDVSA. *See id.* at *7-8 (holding Maduro-appointed board of PDVSA not entitled to represent PDVSA in U.S. courts). This Court is thus required to treat only the actions of the U.S.-recognized Venezuelan government and the Ad Hoc Board as actions of the Venezuelan government (including its political subdivisions) and PDVSA after January 2019. *See Zivotofsky v. Kerry*, 576 U.S. 1, 19 (2015) (holding "recognition [is] the exclusive prerogative of the Executive"); *see also In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 333-34 (S.D.N.Y. 2023) (declining to find Afghanistan's Central Bank an "agency or instrumentality" of the Taliban because doing so would be judicial recognition of the Taliban). Plaintiff's reliance on the Maduro regime and PDVSA's conduct (as directed by Maduro) after January 2019 is irrelevant.

Despite these temporal defects, Plaintiff has failed to show by "compelling, admissible evidence" he is entitled to execute his Default ATA Judgment upon the Ministry of Finance's and PDVSA's blocked assets. *See Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1049 (D.C. Cir. 2014). And Plaintiff likewise has failed to show by a preponderance of the evidence that he is entitled to execute his Default ATA Judgment upon the PDVSA Subsidiaries' blocked assets. *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (holding, where statute is silent, "preponderance-of-the-evidence standard" is generally "applicable in civil actions between private litigants").

As to Petrocedeño, Plaintiff did not submit any evidence or make any factual allegations,

and instead solely asked this Court to take judicial notice of the *Stansell* and *Doe* Orders. *See* ECF 6 at 3-4. But it is well-settled that judicial notice of another court's order is limited to "establish the fact of such litigation and related filings," not for establishing "the truth of the matters asserted in the other litigation." *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (cleaned up).

As to the remaining Venezuelan Non-Parties, Plaintiff's purported evidence principally comprises the declarations of John McBrien (the "McBrien Declarations"). *See, e.g.*, ECF 9-1–4. The McBrien Declarations and their attachments are inadmissible under the Federal Rules of Evidence and are otherwise insufficient to show the Venezuelan Non-Parties are "agencies or instrumentalities" of the FARC. McBrien's declarations are devoid of any mention of Petrocedeño, Petrowarao, and Venezuelan Heavy Industries. And McBrien mentions the remaining PDVSA subsidiaries only *once* stating merely that they are subsidiaries of PDVSA. *See* ECF 9-2 ¶ 13. Moreover, McBrien does not mention any specific act of the Ministry of Finance, instead attempting to connect a former Ministry of Finance official to the Maduro regime, and in turn, to the FARC. *See, e.g.*, ECF 9-2 ¶ 31 (claiming former Ministry official "serves to support" Maduro regime's corruption, and therefore the FARC).

Finally, as to PDVSA, McBrien only makes a few broad, conclusory statements based on bare-bones evidence. In particular, McBrien contends that Chávez "offered" to fund the FARC, purportedly with the "cooperation" of an unnamed "manager of PDVSA," but McBrien's own sources indicate that this alleged "offer" was merely an offer. ECF 9-2 ¶¶ 7-9; ECF 9-3 at 17 (observing no agreement reached). McBrien also quotes testimony claiming PDVSA was involved in "money laundering" for the FARC. *See* ECF 9-2 ¶¶ 11-12. Besides being inadmissible hearsay, that testimony does not address PDVSA's conduct, but that of two alleged PDVSA affiliates not

22

present before this Court.  *See* ECF 9-3 at 23-24.

Moreover, McBrien's "opinion" that PDVSA and the Ministry of Finance are "agent[s] and instrumentalit[ies] of the FARC" (ECF 9-2 ¶¶ 12, 31) is inadmissible as either an expert or lay opinion, though Plaintiff did not proffer McBrien as an expert.  McBrien would not qualify as an expert because he lacks relevant "knowledge, skill, experience, training, or education" to opine on whether PDVSA and the Ministry of Finance are each an "agency or instrumentality" of the FARC. Fed. R. Evid. 702; *see also Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 2003 U.S. Dist. LEXIS 7986, at *6 (S.D.N.Y. May 14, 2003) (excluding expert testimony where plaintiff "proffered nothing to indicate that [the expert] has any expertise" in the matters at issue).  And McBrien's experience at OFAC between 1987 and 2011, *see* ECF 9-1 ¶¶ 1-6, is irrelevant to that question. *See* Fed. R. Evid. 402.  That McBrien, like Plaintiff, conflates the term "agent" with "agency" and refers to Maduro as the "current Venezuelan President" only underscores the unreliability of his testimony.  *See, e.g.*, ECF 9-2 ¶¶ 10-17.  McBrien's testimony also is inadmissible as lay testimony because he lacks "personal knowledge" of whether PDVSA or the Ministry of Finance are an "agency or instrumentality" of the FARC.  *See* Fed. R. Evid. 602 & 701(a); *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) ("A witness may not testify to a matter until evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter.").

Moreover, the McBrien Declarations are inadmissible hearsay and hearsay-within-hearsay. Fed. R. Evid. 801, 802.  They consist largely of prolonged quotations from, *inter alia*, news articles, press releases, and think tank reports.  *See, e.g.*, ECF 9-2 ¶¶ 14-17, 27-29, 35-39.  None of this is admissible under any hearsay exception.  *See* Fed. R. Evid. 802, 805; *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as

23

the basis of his testimony.").  And McBrien's "opinions" that PDVSA and the Ministry of Finance are "agent[s] and instrumentalit[ies] of the FARC" (ECF 9-2 ¶¶ 12, 31) are inadmissible legal conclusions.  *See Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010) ("[W]itnesses may not present testimony in the form of legal conclusions.").

Additionally, Plaintiff has adduced no credible, admissible evidence to overcome the presumption of corporate separateness of the PDVSA subsidiaries.  Instead, Plaintiff relies in error on OFAC's so-called "Fifty Percent Rule," alleging that because PDVSA was an "agent or instrumentality" of the FARC, so too were the PDVSA subsidiaries because they are owned 50% or more by PDVSA.  *See, e.g.*, ECF 9, 24, 29.  But OFAC's asset-blocking rules are separate from TRIA "agency or instrumentality" determinations.  *See Stansell*, 771 F.3d at 731 n.13 ("[I]t is not proper for the district court to rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status.  The agency or instrumentality determination is separate from the blocked asset determination."); *Caballero v. FARC*, 2020 N.Y. Misc. LEXIS 10368, at *3 (N.Y. Sup. Ct. Dec. 4, 2020) (holding OFAC designation "does not show that [defendant] is an agent or instrumentality of FARC, as neither the OFAC documents nor the United States Department of the Treasury press release mentions FARC").  Plaintiff has not alleged, nor has this Court made any factual findings, that the PDVSA subsidiaries should be treated as alter egos of PDVSA, and the writs therefore were issued on grounds that defy basic principles of corporate separateness.  *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195-96 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013) ("[A] claim sufficient to overcome the presumption of separateness afforded to related corporations, is not established by the bare allegation that one corporation dominated and controlled another.").

Thus, the A&I Orders and subsequent orders authorizing writs should be vacated, the

ensuing writs quashed, and this action dismissed.  At a minimum, this Court should hold an evidentiary hearing such that the Venezuelan Non-Parties may contest Plaintiff's meager evidentiary showing.  *See Caballero v. FARC*, 2024 WL 2976712, at *11 (D. Conn. June 13, 2024) ("When there is a genuine issue of fact about whether an entity is an agency or instrumentality, a court should conduct an evidentiary hearing on the issue.").

### C.    Plaintiff Failed To Show The Blocked Assets Are Assets "Of" The FARC

Plaintiff's attempt to attach the Venezuelan Non-Parties' assets also fails because Plaintiff has not proven the assets are "blocked assets *of* that terrorist party (*including* the blocked assets of any "agency or instrumentality" of that terrorist party)."  TRIA § 201(a) (emphasis added).  The plain meaning of the emphasized language is that "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party."  U.S. Br. at 303, *In re 650 Fifth Ave. and Related Props.*, No. 17-3258 (2d Cir.), ECF 240; *see In re Terrorist Attacks*, 657 F. Supp. 3d at 332-33 (holding TRIA requires assets be "of" the judgment debtor).  Further, the word "including" (instead of "and" or "or") underscores that "the terrorist party" must have at least an ultimate-beneficial ownership interest in "the blocked assets."  TRIA § 201(a).  Indeed, TRIA's "ownership requirement," is reflected both in the plain text of the statute and in the "common law execution principles' against which it was enacted.  US SoI 29-31.  But Plaintiff has never alleged the assets he seeks are property "of" the FARC, or that the FARC has any ownership interest, putting TRIA out of reach.

## V.    THE UNDERLYING DEFAULT JUDGMENT AGAINST THE FARC IS VOID FOR LACK OF JURISDICTION

Plaintiff's Default ATA Judgment is void because Plaintiff lacked standing to even assert an ATA claim — by his own allegations, he was not a U.S. citizen until years after the terrorist acts against his father.  *See* Complaint ¶¶ 2, 12, *Caballero v. FARC*, No. 18-cv-25337 (S.D. Fla.),

ECF 1.  Section 2333(a) of the ATA, requires a plaintiff be a "national of the United States" at the time he or she is injured to invoke the jurisdiction of an "appropriate district court of the United States."  *See also Sisso v. Islamic Rep. of Iran*, 2007 WL 2007582, at *10 (D.D.C. July 5, 2007) (noting plaintiff could bring claim under § 2333 because plaintiff "is a United States citizen, and was a citizen at the time of the September 19 bombing").  This nationality requirement is clear from the statute's plain language.

Nothing in the statute suggests § 2333(a) provides a cause of action to foreign nationals injured by acts of international terrorism who later become naturalized U.S. citizens.  Had Congress intended to provide such a cause of action, it would have done so.  Moreover, § 2333(a) expressly covers only injuries that a U.S. national "sustains"; the use of the present tense denotes that the individual must be a U.S. national when he sustains the injury.

The Congressional Record further makes clear that § 2333(a) was intended "to provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction *over terrorist acts abroad against United States nationals*."  137 Cong. Rec. 8143 (1991) (consideration of S. 740) (emphasis added); *see also id.* (statement of Sen. Grassley) ("This legislation would, for the first time, provide for Federal civil remedies for American victims of international terrorism.").

Although the Florida federal court found the ATA covered individuals who became naturalized U.S. citizens after the act of international terrorism, that finding is not afforded preclusive effect in the default context.  *See Abrams v. Interco Inc*., 719 F.2d 23, 33 n.9 (2d Cir. 1983) (observing "the decision of issues not actually litigated, e.g., a default judgment, has no preclusive effect in other litigation").  Moreover, the federal court's reasoning — that "Congress intended for the ATA to have a broad scope" — and the cases involving U.S. citizens or their

26

estates and survivors upon which that court relied, do not support the conclusion that Plaintiff could have ATA standing for injuries he sustained before becoming a U.S. national. *See Caballero*, 2020 WL 7481302, at *3, *5. The court also cited cases where courts "permitted survivors of U.S. nationals who were killed by acts of international terrorism to state a claim under the ATA even if the survivors are not U.S. nationals," but § 2333(a) expressly provides standing to the "estate, survivors, or heirs" of U.S. nationals injured in terrorist attacks. *Id.* at *3. Thus, none of these cases supports the federal court's decision to extend the ATA beyond its plain terms.

The Default ATA Judgment is also void because the federal court improperly gave preclusive effect to the state court default judgment, which is itself void. The state court incorrectly asserted subject-matter jurisdiction under the Alien Tort Statute. *Caballero v. FARC*, 2014 Fla. Cir. LEXIS 51243, at *44-49 (Fla. Cir. Ct. May. 2, 2014) (incorporated by reference in Ex. 4). The state court reasoned that, because state courts generally have concurrent jurisdiction over "a federal cause of action," it has concurrent jurisdiction over ATS claims. *Id.* at 44. But the "ATS is 'strictly jurisdictional' and does not . . . provide or delineate the definition of a cause of action for violations of international law." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 254 (2018) (citation omitted); *see also* 28 U.S.C. § 1350 ("[U.S.] district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or treaty of the United States.").

Even if the state court could exercise jurisdiction under the ATS, ATS jurisdiction does not extend to suits against foreign entities such as the FARC. *See Jesner*, 584 U.S. at 264-65. ("[A]bsent further action from Congress it would be inappropriate for courts to extend ATS liability to foreign corporations."). Nor does it extend to claims, like Plaintiff's, that are based on conduct occurring entirely outside the United States. *See Kiobel*, 569 U.S. at 117 ("The principles

27

underlying the presumption against extraterritoriality thus constrain courts exercising their power under the ATS."); *Balintulo v. Daimler AG*, 727 F.3d 174, 189-190, 192 (2d Cir. 2013) (holding presumption against extraterritoriality not rebutted for ATS claims based on conduct occurring in South Africa even though defendants maintained business in the United States). Thus, the state court's exercise of jurisdiction under the ATS is fundamentally incorrect and the Default ATA Judgment is void to the extent it gave preclusive effect to the void judgment of the state court.

## **CONCLUSION**

For the foregoing reasons, Non-Party Respondents the Venezuelan Non-Parties respectfully request this Court vacate the A&I Orders and other orders authorizing writs, quash all writs issued pursuant thereto, and dismiss this action as to the Venezuelan Non-Parties' assets with prejudice.

Dated: February 27, 2025     Respectfully submitted,

          **WHITE & CASE** LLP

          By: *s/ Claire A. DeLelle*
          Claire A. DeLelle
          Nicole Erb
          Blair E. Trahan (*pro hac vice* pending)
          Benedict S. Bernstein (*pro hac vice* forthcoming)
          701 Thirteenth Street N.W.
          Washington, D.C. 20005
          (202) 626-3600
          claire.delelle@whitecase.com
          nerb@whitecase.com
          blair.trahan@whitecase.com
          benedict.bernstein@whitecase.com

          *Counsel for the Venezuelan Non-Parties*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Civil Rule 7.1(c) of the Rules of this District and this Court's Individual Practices, Rule 4.B.i, I hereby certify that the accompanying Memorandum of Law in support of the Venezuelan Non-Parties' Motion to Vacate Orders, Quash Writs of Execution, and Dismiss Action With Prejudice contains 8,691 words, excluding the parts of the document that are exempted by Rule 7.1(c). This certificate was prepared in reliance on the word-count function of Microsoft Word.

Dated:  February 27, 2025

Respectfully submitted,

**WHITE & CASE** LLP

By: *s/ Claire A. DeLelle*
Claire A. DeLelle
Nicole Erb
Blair E. Trahan (*pro hac vice* pending)
Benedict S. Bernstein (*pro hac vice* forthcoming)
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-3600
claire.delelle@whitecase.com
nerb@whitecase.com
blair.trahan@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for the Venezuelan Non-Parties*

29