UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE CLAIMS AGAINST THE                    Index No. 20-MC-249 (LGS)(SN)
VALERO-PETROCEDENO ACCOUNT

_____

AMENDED AND CONSOLIDATED ANSWER AND
THIRD-PARTY COMPLAINT FOR RELIEF IN INTERPLEADER
OF GARNISHEE JPMORGAN CHASE BANK, N.A. IN RESPONSE TO
WRITS OF GARNISHMENT ON THE VALERO-PETROCEDENO ACCOUNT

1.      In accordance with the Court's Order entered October 10, 2025 (ECF 192), garnishee and third-party plaintiff JPMorgan Chase Bank, N.A. ("JPMorgan") submits this Amended and Consolidated Answer and Third-Party Complaint for Relief in Interpleader (the "Amended Interpleader") in response to writs of garnishment served on JPMorgan by three of the judgment creditor groups named as third-party defendants – Keith Stansell et al. (the "Stansells"), Antonio Caballero ("Caballero"), and Meudy Alban Osio et al. (the "Osios"), all of whom have pending proceedings under the Terrorism Risk Insurance Act of 2002 ("TRIA," Pub. L. No. 107297, codified as a note to 28 U.S.C. § 1610) to enforce default judgments they obtained against Fuerzas Armadas Revolucionarias de Colombia (the "FARC") and others.  The writs all apply to the blocked account, held by JPMorgan in New York, referred to here as the "Valero-Petrocedeno Account," as in the caption, or the "Account."

2.      This Amended Interpleader amends and consolidates JPMorgan's two original, substantively identical interpleader complaints regarding the Valero-Petrocedeno Account: (i) the "Answer, Counterclaim, and Third-Party Complaint for Relief in Interpleader" filed on November 4, 2024 in the Stansells' TRIA judgment enforcement proceeding in the Southern District of Florida ("SDFL"), *Stansell et al. v. Revolutionary Armed Forces of Colombia (FARC) et al.*, No. 1:19-cv-20896 ("*Stansell* SDFL"; ECF 585); and (ii) the interpleader complaint with

the same title filed on November 12, 2024 in the Osios' SDFL judgment enforcement proceeding, *Osio et al. v. Maduro Modos et al.*, 21-cv-20706 ("*Osio* SDFL"; ECF 242). The SDFL interpleader proceedings were later transferred to this Court, as discussed below, and consolidated with Caballero's TRIA judgment enforcement proceeding in this Court, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia et al.*, No. 20-mc-00249 ("*Caballero*"). By Order of Judge Caproni entered on July 8, 2025 (ECF 162), Caballero's proceeding was renamed "In Re Claims Against The Valero-Petrocedeno Account."

A. The Nature of the Valero-Petrocedeno Account and the
Third-Party Defendants with Competing Interests in the Account

3. JPMorgan set up the Valero-Petrocedeno Blocked Account on or about April 3, 2024 at the request of non-party Valero Marketing and Supply Company, a subsidiary of Texas-based Valero Energy Corporation (collectively, "Valero"). Valero made that request to segregate from its own account at JPMorgan funds that, according to Valero, belonged to third-party defendant Petrocedeno, S.A. ("Petrocedeno"), a subsidiary of third-party defendant Petroleos de Venezuela, S.A. ("PDVSA"). On January 28, 2019, PDVSA was designated by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department as a Specially Designated National ("SDN") under Executive Order 13850, and it remains on the SDN List today.

4. To establish the Valero-Petrocedeno Account, JPMorgan transferred $166,818,471.76 from Valero's operating account at JPMorgan to a new account, with account number ending 2927, that JPMorgan blocked under Executive Order 13850 and 31 C.F.R. Part 591, the Venezuela Sanctions Regulations (the "VSR") administered by OFAC. On or about April 5, 2024, JPMorgan filed a "Report on Blocked Property" with OFAC (the "Blocking Report," Ex. 1), notifying OFAC of its establishment of the Blocked Account.[1]

---

[1] References to "Ex. __" are to the exhibits to this Amended Interpleader.

5. JPMorgan has been the garnishee of the Valero-Petrocedeno Account, and the Account has been held in New York, ever since the bank set up the Account. As garnishee, JPMorgan administers the Account in accordance with the VSR and cannot unblock the Account, and release the blocked funds therein, unless it becomes legally authorized to do so consistent with OFAC regulations, state garnishment laws, and TRIA.

6. Valero has no role in administering the Account and no control over the Account or the funds therein. Nor does Valero have a property interest in the Blocked Account, as it has publicly stated, so it has not been named a third-party defendant in any of JPMorgan's interpleader complaints.[2]

7. In this Amended Interpleader, JPMorgan names six separate parties as third-party defendants, all of whom have an actual or potential interest in the Valero-Petrocedeno Account. Four of those six consist of judgment creditors of the FARC: the Stansells, Caballero, the Osios, and Olivia Pescatore et al. (the "Pescatores") (collectively, the "Judgment Creditors"), all of whom are seeking to enforce their judgments by executing on some or all of the blocked funds in the Valero-Petrocedeno Account. Petrocedeno, which has an ownership interest in the funds in the Account, and PDVSA, which has an ownership interest in Petrocedeno, are the two other named third-party defendants.[3]

8. As of the time of this Amended Interpleader, Petrocedeno and PDVSA are represented in this proceeding by two separate law firms, each of which claims to be the sole

---

[2] For example, in its opposition in *Osio* SDFL to the Osios' motion to compel discovery of Valero, Valero stated that it has "no stake in the Blocked Account" – referring to the Valero-Petrocedeno Account. *See Osio* SDFL ECF 320 at 1.

[3] In its original interpleader complaints filed in the SDFL, JPMorgan also named as third-party defendants the FARC judgment creditors in a separate litigation in the SDFL, *Marron et al. v. Maduro Moros et al.*, 21-cv-23190-FAM. The Marrons, represented by the same counsel representing the Osios, have since disclaimed an interest in the Valero-Petrocedeno Account, so they are not named as third-party defendants in this Amended Interpleader.

authorized representative of the two entities.  White & Case LLP represents Petrocedeno and PDVSA through the Ad Hoc Board of PDVSA, while Kellner Herlihy Getty & Friedman, LLP represents the two entities as counsel to the Maduro regime.  The issue of which firm has the authority to represent Petrocedeno and PDVSA is expected to be resolved by this Court sometime after the filing of this Amended Interpleader.  For purposes of this Amended Interpleader, references to Petrocedeno and PDVSA do not distinguish between the entities associated with the Ad Hoc Board and those associated with the Maduro regime.

9.     JPMorgan itself has no claim to the Valero-Petrocedeno Account.  JPMorgan is a neutral stakeholder in this proceeding and does not seek to impede any particular party's recovery of some or all of the blocked funds in the Account.  But because there are competing claims to the Account, JPMorgan is entitled to have all such claims adjudicated in a single proceeding to which all claimants are parties and have an opportunity to assert their interests.  Moreover, any directive to JPMorgan to turn over the funds in the Account must be in accordance with governing law so as not to expose JPMorgan to the risk of double or multiple liability as to a blocked asset whose balance exceeds $170 million.

B.     The Judgment Creditors' Respective Writs
       Applicable to the Valero-Petrocedeno Account

10.     Of the four groups of Judgment Creditors, all but the Pescatores (who have a sharing agreement with the Stansells) have served JPMorgan with one or more writs of garnishment or execution on the Valero-Petrocedeno Account.

       (i)     The Stansell Writ

11.     The Stansells obtained their original writ on the Valero-Petrocedeno Account on October 15, 2024 in *Stansell* SDFL (*Stansell* SDFL ECF 572) and served the writ on JPMorgan the same day.  The Stansells obtained the writ as part of their efforts to enforce their default

judgment against the FARC and others (the "Stansell Judgment") under the Anti-Terrorism Act, 18 U.S.C. § 2333 (the "ATA"). The Stansell Judgment was entered on June 15, 2010 by the United States District Court for the Middle District of Florida in an action entitled *Stansell, et al. v. Revolutionary Armed Forces of Colombia (FARC), et al.*, No. 09-cv-2308 (RAL)(MAP). The Stansells Judgment is in the amount of $318,030,000, as trebled, some part of which the Stansells contend is unsatisfied.

12. By Notice of Withdrawal filed in *Stansell* SDFL on October 2, 2025 (*Stansell* SDFL ECF 1015), the Stansells withdrew their original writ on the Valero-Petrocedeno Account. Shortly before that, on September 17, 2025, the Stansells obtained and served on JPMorgan a separate writ on the Account issued out of the Stansells' own proceeding in this Court, *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (LGS)(SN) ("*Stansell* SDNY"). The SDNY-issued writ remains the Stansells' operative writ today (the "Stansell Writ," Ex. 2).

(ii)    The Caballero Writ

13. In *Caballero*, Caballero obtained a writ of execution on the Valero-Petrocedeno Account on December 9, 2024 (the "Caballero Writ," *Caballero* ECF 118; Ex. 3). Caballero obtained the Caballero Writ as part of his efforts to enforce his default judgment under the ATA entered on May 20, 2020 in *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020) (ECF 63), against the FARC and others (the "Caballero Judgment"). Caballero registered the Caballero Judgment in the SDNY on July 6, 2020.

14. Caballero never moved for or obtained a writ out of the SDFL, and the Caballero Writ remains his operative writ on the Valero-Petrocedeno Account today.

(iii)    The Osio Writ

15. The Osios obtained their original writ on the Valero-Petrocedeno Account in the *Osio* SDFL on or about September 23, 2024 and served the writ on JPMorgan on that date. The

5

Osios obtained the writ as part of their efforts to enforce their default judgment against the FARC, Maduro and others entered in *Osio* SDFL on August 4, 2023 in the amount of $217 million in compensatory damages (the "Osio Judgment," *Osio* SDFL ECF 91). According to the Osios, none of the principal amount of the Osio Judgment has been satisfied.[4]

16. By Report and Recommendation ("R&R) entered on April 9, 2025 in *Osio* SDFL (*Osio* SDFL ECF 401), Magistrate Judge Torres recommended that the Osio Writ be dissolved, ruling that the Osios had not "made a sufficient showing to attach the assets of Petrocedeno" and two other PDVSA subsidiaries because the Osios "fail to make a particularized showing as to any (let alone each) subsidiary." *Id.* at 20. By Order entered on July 9, 2025 (*Osio* SDFL ECF 583), Judge Darrin P. Gayles adopted most of the April 9 R&R, including the recommendation as to Petrocedeno.

17. Before the Order adopting the R&R was entered, the Osios moved *ex parte* in June 2025 for the issuance of a new writ *nunc pro tunc* on the Valero-Petrocedeno Account (*Osio* SDFL ECF 537). By Order entered September 4, 2025 (*id.* ECF 674), Magistrate Judge Edwin Torres granted that motion in part, issuing a new writ but not backdating the writ to the date of the Osios' original writ. The Osios' new writ (the "Osio Writ"; *id.* ECF 675; Ex. 4) was issued on September 5, 2025 and served on JPMorgan on September 8.

18. On September 18, Petrocedeno filed an appeal to Judge Gayles in *Osio* SDFL from Magistrate Judge Torres's order issuing the Osio Writ. *See Osio* SDFL ECF 694. That appeal is fully briefed and pending as of the time of this Amended Interpleader.

---

[4] At around the same time the Osios served their original writ on JPMorgan, they also served a writ, purportedly on the same Valero-Petrocedeno Account, on Valero. That writ remains in place but is of no apparent consequence: Valero is not the garnishee of the Account, it has no control over or access to the Account, and it has no interest in the blocked funds.

19. On September 29, 2025, the Osios and JPMorgan moved jointly in *Osio* SDFL to transfer the Osio Writ to this Court for adjudication in this proceeding. (*Osio* SDFL ECF 699) Petrocedeno, as stated in its response to the joint transfer motion (*Osio* SDFL ECF 720), does not oppose a transfer so long as its appeal from the order issuing the Osio Writ is also transferred with the writ. Caballero has opposed the transfer motion (*Osio* SDFL ECF 719), and the Osios and JPMorgan have filed separate replies to the opposition (*id.* ECF 728, 735). The joint transfer motion is undecided as of the time of this Amended Interpleader, so the Osio Writ is technically not yet before the Court.

20. Meanwhile, on September 18, 2025, the Osios moved *ex parte* in their own SDNY proceeding, *Osio et al. v. Nicolas Maduro Moros et al.*, No. 25-mc-00390-JHR ("*Osio* SDNY"), for a separate writ on the Valero-Petrocedeno Account. *See Osio* SDNY ECF 9. That motion has not been decided as of the time of this Amended Interpleader.

C.  Procedural History of the Interpleader Proceedings
    Regarding the Valero-Petrocedeno Account

21. On November 4, 2024, in response to the Stansell Writ, JPMorgan, filed its original answer and interpleader complaint (*Stansell* SDFL 585) in accordance with Florida garnishment procedures. In response to the Osio Writ, JPMorgan, on November 12, 2024, filed a substantively identical answer and interpleader complaint in *Osio* SDFL (Osio SDFL ECF 242). The original interpleader complaints included the Stansells, the Osios, Caballero, the Pescatores, Petrocedeno and PDVSA as third-party defendants.

22. On December 13, 2024, JPMorgan moved in *Stansell* SDFL to consolidate the interpleader proceedings there and in *Osio* SDFL and transfer them, under 28 U.S.C. § 1404(a), to this Court to be consolidated with *Caballero* (*Stansell* SDFL ECF 619). JPMorgan made a substantively identical transfer motion in *Osio* SDFL (*Osio* SDFL ECF 325).

23.     By Report and Recommendation dated January 22, 2025 in *Stansell* SDFL (ECF 654), Magistrate Judge Torres recommended that the transfer motion be granted.  By Order entered on April 2, 2025 in *Stansell* SDFL (the "Stansell Transfer Order," ECF 687), Judge Robert N. Scola, Jr. adopted the R&R and granted the transfer motion.  By Order entered on April 7, 2025 in *Osio* SDFL (the "Osio Transfer Order," ECF 395), Judge Gayles adopted Magistrate Judge Torres's separate but substantively identical Report and Recommendation in *Osio* SDFL (ECF 357).

24.     By Order dated June 24, 2025 (*Stansell* SDFL ECF 794), Judge Scola denied the Stansells' motion in *Stansell* SDFL for reconsideration of the Stansell Transfer Order.

25.     On April 8, 2025, after the Stansell and Osio Transfer Orders had been entered, the SDFL Clerk's Office transferred to the Clerk of this Court the court filings in *Stansell* SDFL and *Osio* SDFL that were identified in the orders.  On May 13, 2025, the SDNY's Clerk's office assigned *Osio* SDFL to Judge Hellerstein under index number 25-cv-3992, and on May 19, 2025, it assigned the *Stansell* SDFL proceeding to Judge Failla under index number 25-cv-4181.

26.     By Order entered by Judge Caproni on July 10, 2025 (ECF 162), the Court consolidated the transferred *Stansell* and *Osio* proceedings under a single index number and renamed *Caballero* as stated in the caption.  By Order entered by Judge Caproni on October 10, 2025 (ECF 192), the Court directed JPMorgan to file this Amended Interpleader and set a revised briefing scheduling on the issue of which law firm is properly authorized to represent Petrocedeno and PDVSA in this proceeding.

27.     This proceeding was thereafter reassigned from Judge Caproni to Judge Schofield and Magistrate Judge Netburn, who entered an Order on October 17, 2025 (16-mc-405 ECF 600) that, among other things, reaffirmed the directives in Judge Caproni's October 10 Order and

8

otherwise stayed this proceeding until the question of who is authorized to represent Petrocedeno and PDVSA has been resolved.

<u>FIRST AFFIRMATIVE DEFENSE</u>

28.     Judgment creditors of the FARC cannot execute on the Valero-Petrocedeno Account under TRIA § 201(a) without first meeting their burden of proof as to all the requirements for turnover under § 201(a), and without violating any applicable provisions of the Foreign Sovereign Immunities Act (the "FSIA"). Those requirements for execution under TRIA § 201(a) include that the judgment creditors prove that they "obtained a judgment against a terrorist party for a claim based on an act of terrorism"; that "the amount sought to be executed . . . does not exceed the compensatory damages awarded"; that the assets of the entity whose assets are allegedly subject to execution are "blocked"; and that that entity is "an agency or instrumentality of the terrorist party." *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022).

29.     The funds in the Valero-Petrocedeno Account, having been blocked in accordance with OFAC sanctions regulations, cannot be transferred to any of the third-party defendants except pursuant to either a license from OFAC permitting such a transfer, or, as to the Judgment Creditors, a final judgment under TRIA § 201(a) following a judicial determination that the Judgment Creditors awarded the judgment have met their burden of proof on all elements of a claim under § 201(a).

<u>SECOND AFFIRMATIVE DEFENSE</u>

30.     For the Valero-Petrocedeno Account to be subject to potential execution under TRIA § 201, Petrocedeno must be determined to be agency or instrumentality, within the meaning TRIA, of the FARC, Maduro or any other defendants in *Stansell* SDFL, *Osio* SDFL and *Caballero*. Although Petrocedeno has previously been found in certain TRIA proceedings to be

9

an agency or instrumentality of the FARC, Petrocedeno disputes any such determinations and is expected to argue in this proceeding that it is not an agency or instrumentality of the FARC, and that the Court therefore lacks subject matter jurisdiction under TRIA over proceedings to execute on the Valero-Petrocedeno Account. Until and unless the Court rules otherwise, the Valero-Petrocedeno Account will not be subject to execution under TRIA § 201(a).

THIRD AFFIRMATIVE DEFENSE

31. The Osio Writ, issued out of the SDFL, is of disputed validity, and the Osios' motion in *Osio* SDNY for a writ out of the SDNY is pending as of the time of this Amended Interpleader. In addition, Petrocedeno has applied in *Osio* SDFL to dissolve the Osio Writ, and that application, still pending, will be resolved either in *Osio* SDFL or in this proceeding. If the Osio Writ is ultimately ruled to be invalid, and if the Osios do not obtain a new writ in *Osio* SDNY, then the Osios will likely be unable to execute on any part of the Valero-Petrocedeno Account.

FOURTH AFFIRMATIVE DEFENSE

32. PDVSA and Petrocedeno have each argued, separately or collectively, on multiple motions in *Stansell* SDFL and in *Osio* SDFL that Petrocedeno's blocked assets, including the Valero-Petrocedeno Account, are not subject to execution under TRIA § 201(a), and that the Stansell Writ and the Osio Writ are invalid. Among the grounds on which PDVSA and Petrocedeno contend the writs are invalid include lack of personal and subject matter jurisdiction, lack of due process, ineffective service, and a failure to show that Petrocedeno (and other Venezuelan entities) are agencies or instrumentalities of the FARC. *See*, *e.g.*, *Osio* SDFL 310; *Stansell* SDFL ECF 827. The grounds advanced by PDVSA and Petrocedeno in their dissolution motions must be definitively resolved before any of the funds in the Valero-Petrocedeno Account can be turned over to the Stansells or the Osios.

FIFTH AFFIRMATIVE DEFENSE

33.  PDVSA and Petrocedeno, in two separate motions filed in *Caballero* on behalf of, respectively, the Ad Hoc Board and the Maduro regime, argue that the Caballero Writ, among others, is invalid on largely the same grounds on which PDVSA and Petrocedeno contend that the Stansell and Osio Writs are invalid.  *See* ECF 138-39 (Maduro); ECF 144-46 (Ad Hoc Board).  Those motions have never been ruled on, and assuming PDVSA and Petrocedeno do not withdraw the motions, the substantive arguments made in the motions must be resolved before the validity of the Caballero Writ can be confirmed, and any funds in the Valero-Petrocedeno Account can be turned over to Caballero.

SIXTH AFFIRMATIVE DEFENSE

34.  Since the time they obtained a default judgment against the FARC and others, the Stansells, Pescators and Caballero are each believed to have recovered substantial sums of money enforcing their respective judgments.  Because neither the Stansells, the Pescatores nor Caballero can recover more than the compensatory damages component of their respective judgments, those Judgment Creditors must show, before any of the funds in the Valero-Petrocedeno Account may be turned over to any of them, that any such turnover does not result in their recovering more money than they are entitled to under their judgments.

SEVENTH AFFIRMATIVE DEFENSE

35.  If the Court were to enter a turnover order directing JPMorgan, as garnishee, to transfer the funds in the Valero-Petrocedeno Accounts to any of the third-party defendants, then that order should contain standard provisions, including releases, that protect the garnishee from the risk of exposure to double or multiple liability in the event the order is ever challenged by any person or entity.

11

36.     Those standard provisions consist of, at a minimum:  (i) a release and discharge of JPMorgan, as garnishee, upon its transfer of the funds in the Valero-Petrocedeno Account; (ii) a bar on future litigation seeking to execute on the Accounts; (iii) the vacating of the Stansell Writ, the Caballero Writ, the Osio Writ, and any other restraints on the Account; and (iv) a deferral of JPMorgan's time to transfer the funds in the Account until after the turnover order directing any such transfer has become final and no longer subject to appeal.

<u>THIRD-PARTY COMPLAINT IN INTERPLEADER</u>

For its third-party complaint in interpleader against the third-party defendants, JPMorgan alleges as follows:

A.     <u>Nature of the Third-Party Complaint</u>

37.     JPMorgan files its third-party complaint, pursuant to Fed. R. Civ. 22 and the statutory bases set forth below, for a judicial determination of the rights to the Valero-Petrocedeno Account as among the third-party defendants:  the Stansells, Caballero, the Osios, the Pescatores, Petrocedeno and PDVSA.[5]

38.     The Judgment Creditors have competing claims to the Valero-Petrocedeno Account, and each seeks an order under TRIA § 201(a) directing JPMorgan to turn over to them some or all of the funds in the Account to enforce their default judgment against the FARC. Absent a sharing agreement among all the Judgment Creditors that eliminates the Court's need to determine who among them has priority over the others, the Judgment Creditors' competing interests require such a determination before the blocked funds can be turned over to any of them.  But whether or not the Court ultimately must decide the issue of priority, the Judgment

---

[5]  JPMorgan also names John Does 1-10 as third-party defendants to guard against the unlikely event that some party not now named as a third-party defendant emerges to make a claim on the Valero-Petrocedeno Account. JPMorgan does not, as noted, name Valero as a third-party defendant because Valero has already represented, in its Answer and Affirmative Defenses filed on October 15, 2024 in *Osio* SDFL in response to a writ served on it by the Osios, that it has no claim to the funds in the Account.  (*Osio* SDFL ECF 197)

Creditors still face the arguments advanced by Petrocedeno and PDVSA as to why the Valerio-Petrocedeno Account is not subject to execution under TRIA § 201(a).

39.     This proceeding enables JPMorgan, in the event it is directed to turn over the funds in the Valero-Petrocedeno Account, to obtain a discharge and other relief as to the Account that is binding on all third-party defendants, and that minimizes the risk that the bank will be subject to double or multiple liability from future litigation challenging the propriety of the turnover order or judgment.

B.     Jurisdiction and Venue

40.     This Court has subject matter jurisdiction over the third-party interpleader claim asserted herein (i) pursuant to 28 U.S.C. § 1331, because the claim arises under the laws of the United States, in particular TRIA the FSIA; (ii) pursuant to 28 U.S.C. § 1367, because the matters at issue in this interpleader proceeding are sufficiently related to the Judgment Creditors' writs on the Valero-Petrocedeno Account, which themselves are within the Court's original jurisdiction, that they form part of the same case or controversy; and (iii) pursuant to 28 U.S.C. § 1335, because the third-party claim is in the nature of interpleader, JPMorgan has in its custody property of the value of $500 or more, and two or more adverse claimants named as third-party defendants are of adverse citizenship.

41.     Venue of JPMorgan's counterclaim and third-party claim is properly set in this judicial district under 28 U.S.C. § 1391(b)(2) because the Valero-Petrocedeno Account is located in this district, and because a substantial part of the events giving rise to the claims – including the Stansells' and Caballero's obtaining of their respective writs – occurred in this district.

C.     The Parties

42.     Third-party plaintiff JPMorgan is a national banking association with its main office in Ohio and locations in New York.

43. Third-party defendants the Stansells, Caballero and the Osios all have default judgments under the ATA against the FARC and others, as set forth in paragraphs 11-20 above, and all seek to enforce their judgments by executing on the Valero-Petrocedeno Account under TRIA § 201(a). Third-party defendant the Pescatores also have a default judgment against the FARC, as discussed below.

44. Stansell Judgment Creditors: Third-party defendants the Stansells consist of Keith Stansell, Marc Gonsalves, Thomas Howes, Christopher T. Janis, Greer C. Janis, Michael J. Janis, Jonathan Janis, and Jonathan Janis, as Personal Representative of the Estate of Judith Janis, deceased. Upon information and belief, Keith Stansell, Thomas Howes and Jonathan Janis are citizens of Florida, Christopher T. Janis is a citizen of New York State, Marc Gonsalves is a citizen of Connecticut, Judith Janis was and Michael I. Janis is a citizen of Alabama, and Greer C. Janis is a citizen of Virginia.

45. Caballero Judgment Creditor: Third-party defendant Caballero is, on information and belief, a resident of Florida.

46. Osio Judgment Creditors: Third-party defendants the Osios consist of Meudy Alban Osio, in her personal capacity and in her capacity as the personal representative of the Estate of Fernando Alberto Alban, Fernando Alban Osio, and Maria Fernando Alban Osio. Although the Osios all resided in New York at the time JPMorgan's original interpleader complaint in *Osio* SDFL was filed, the Osios' counsel has represented that the Osios have moved or are in the process of moving to Florida.

47. Pescatore Judgment Creditors: Third-party defendants the Pescatores consist of Olivia Pescatore, Josh Pescatore, Jada Pescatore, Jarrod Pescatore, and Jordan Pescatore, all of whom are believed to be citizens of Alabama, and Carolyn Pescatore as the representative of the Estate of Frank Pescatore, Sr., Carol Pescatore Harpster, Richard Pescatore, and John Pescatore,

14

all of whom are believed to be citizens of New Jersey. The Pescatores hold a judgment against the FARC and others, and they registered the judgment in the Southern District of New York on or about November 27, 2018 (the "Pescatore Judgment"). *See Pescatore v. Pineda*, No. 1:18 Misc. 545 (S.D.N.Y.).

48. Petrocedeno: Third-party defendant Petrocedeno is a Venezuelan corporation engaged in oil production in Venezuela. Upon information and belief, Petrocedeño is an indirect subsidiary of PDVSA insofar as it is 100% owned by Corporacion Venezolana de Petróleos, which is in turn 100% owned by PDVSA.

49. PDVSA: Third-party defendant PDVSA is Venezuela's state-owned oil company and is, as noted, believed to be the 100% indirect owner of Petrocedeno. On January 28, 2019, OFAC designated PDVSA an SDN pursuant to Executive Order 13850, and PDVSA remains on the SDN List to this day.

50. John Does 1-10: JPMorgan names John Does 1-10 as third-party defendants because it cannot be certain that it has identified all persons and entities with a potential claim to the Valero-Petrocedeno Account. JPMorgan reserves the right to amend its interpleader claim if and when it learns of any other persons or entities with a potential claim to the Account.

D. Facts Relevant to the Third-Party Claim

51. The main facts relevant to JPMorgan's third-party claim relate to the Valero-Petrocedeno Account and the Judgment Creditors' writs on the Account and are discussed at paragraphs 3-6 and 11-20 above and incorporated herein.

52. Because the Stansell Writ, the Caballero Writ and the Osio Writ all cover the Valero-Petrocedeno Account, a known dispute already exists, absent a sharing agreement among all Judgment Creditors, as to which writ takes priority over the others. But there are multiple other factors that could give rise to valid claims to some or all of the funds in the Account.

53. Thus, Petrocedeno and PDVSA seek to challenge prior judicial rulings in the SDFL and in this Court that, among other things, they are instrumentalities of the FARC, and they dispute that the Valero-Petrocedeno Account is subject to execution under TRIA § 201(a). There also remains the dispute as to which law firm has authority to represent them.

54. The Stansells and Caballero have had disputes in the past regarding the validity or continued enforceability of their respective default judgments, and JPMorgan is not in a position to readily know or find out whether any such disputes remain. The Osio Writ is currently not before this Court, and a dispute could arise as to whether the Osios are entitled to recover any of the blocked funds even if the Valero-Petrocedeno Account is deemed to be subject to execution under TRIA § 201(a). The Pescatores and the Stansells have cooperated in the past and appear to have a sharing agreement, but JPMorgan does not know whether a potential dispute could arise between them if the Stansells were awarded some or all of the funds in the Account.

55. In short, there are multiple disputes that exist today and that could arise in the future regarding the disposition of the more than $170 million in the Valero-Petrocedeno Account. Those disputes must be definitively resolved before any of the blocked funds can be released to any of the third-party defendants or anyone else.

* * *

56. Because of the third-party defendants' competing interests in the funds in the Valero-Petrocedeno Account, JPMorgan is being exposed to conflicting claims, to the attendant risk of inconsistent rulings, and ultimately to the prospect of double or multiple liability as to the same blocked asset.

57. Under these circumstances, an interpleader proceeding is warranted because it is the most effective and cost-efficient means by which (i) all interested parties can be brought

before one court, a single determination can be made as to who, if anyone, is entitled to the funds in the Valero-Petrocedeno Account; and (ii) JPMorgan, to the extent it is directed to turn over any such funds, can receive a discharge from further liability as to the Account that is binding on all third-party defendants and not subject to legitimate future challenge.

FIRST CAUSE OF ACTION:
THIRD-PARTY CLAIM FOR INTERPLEADER RELIEF

58. JPMorgan repeats and realleges the allegations in paragraphs 1 through 57 above as if they were set forth here in full.

59. The Judgment Creditors, Petrocedeno and PDVSA all assert competing interests in the Valero-Petrocedeno Account. JPMorgan itself is a neutral stakeholder and takes no position on which, if any, of the third-party defendants has the superior claim to the funds in the Account. But because JPMorgan is subject to conflicting claims, it is exposed to the risk of multiple and inconsistent findings of liability and is accordingly entitled to interpleader relief bringing all third-party defendants before the Court and requiring them to litigate their respective claims to the Valero-Petrocedeno Account.

60. JPMorgan is in need of and legally entitled to an order (i) determining which, if any, of the parties at issue is entitled to the funds in the Valero-Petrocedeno Account; (ii) to the extent those funds are directed to be turned over, discharging JPMorgan from any further liability – to all third-party defendants and any other persons or entities – with respect to the Account; (iii) restraining and enjoining the third-party defendants and any other person or entity from instituting or prosecuting any future proceeding, in any jurisdiction, with respect to the ; and (iv) deferring JPMorgan's time to transfer any funds out of the Account until after any turnover order or judgment is final and non-appealable.

61.     Neutral stakeholders are generally entitled to recover reasonable attorneys' fees and costs incurred in connection with an interpleader proceeding, and whether to pursue its fees and costs is at the election of the stakeholder.  JPMorgan reserves all of its rights here.

*     *     *

WHEREFORE, JPMorgan respectfully requests that the Court:

a.      Grant JPMorgan interpleader relief and determine the rights, if any, of the Stansell Plaintiffs and the third-party defendants to the funds in the Valero-Petrocedeno Account, and which party, if any, has the superior right to some or all of those funds;

b.      Determine that service of this Amended Interpleader upon the third-party defendants – including on PDVSA and Petrocedeno, both of which JPMorgan seeks to serve through counsel – constitutes good and sufficient service under any applicable provision of law;

c.      Determine that the Court has subject matter jurisdiction, personal jurisdiction and *in rem* jurisdiction over all third-party defendants and the Valero-Petrocedeno Account to the extent necessary to determine the parties' respective rights with respect to the Account;

d.      Determine whether the Valero-Petrocedeno Account is subject to execution under TRIA § 201(a) irrespective of which party has priority as to the Account;

e.      Determine, if necessary, the extent to which the Stansell Judgment, the Pescatore Judgment and the Caballero Judgment have not been satisfied to ensure that any turnover of funds from the Valero-Petrocedeno Account does not result in any of those Judgment Creditors receiving more than the judgments and TRIA allow;

f.      Discharge JPMorgan from any and all liability to the third-party defendants and all other persons and entities with respect to the funds in the Valero-Petrocedeno Account to the extent those funds are ordered to be turned over to any one or more of the third-party defendants;

g.     Permanently restrain and enjoin the third-party defendants and all other persons and entities from instituting or prosecuting any proceeding, in any jurisdiction, as to any of the funds in the Valero-Petrocedeno Account that JPMorgan is ordered to turn over to any party;

h.     Defer JPMorgan's obligation to transfer any funds from the Valero-Petrocedeno Account, pursuant to a turnover order or judgment, until after any such order or judgment has become final and non-appealable;

i.     Award JPMorgan its costs, expenses and reasonable attorneys' fees, if and to the extent JPMorgan pursues them, incurred in this third-party proceeding; and

j.     Award JPMorgan such other and further relief as may be just and proper.

Dated:  New York, New York
        October 31, 2025

BRAVERMAN GREENSPUN P.C.

By: */s/ Steven B. Feigenbaum*
        Steven B. Feigenbaum
110 East 42nd Street
New York, New York 10017
sfeigenbaum@braverlaw.net
(212) 682-2900
*Attorneys for Garnishee and Third-Party
Plaintiff JPMorgan Chase Bank, N.A.*