

**Marcos Daniel Jiménez**
305.570.3249
mdj@leoncosgrove.com

October 31, 2025

**VIA ECF**

Hon. Sarah Netburn
Chief United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, New York 10007

**Re:    Supplemental Letter Brief Regarding "Authority-to-Represent Issue" in *In re Claims Against the Valero-Petrocedeno Account*, No. 1:20-mc-00249-(LGS)(SN) and related actions as styled at ECF No. 196 per Order at ECF No. 200**

Dear Judge Netburn:

León Cosgrove Jiménez, LLP and Kellner Herlihy Getty & Friedman LLP (hereinafter referred to as "LCJ/Kellner") respectfully submit this supplemental letter brief in support of our authority to represent the fifteen separate Venezuelan entities for whom we have appeared in the four related actions consolidated before Your Honor.[1]

Since September 30, 2025, events in these and other related proceedings support LCJ/Kellner's authority to continue to represent our clients. Specifically, it has become abundantly clear that we are the only firms that have been retained by the actual third-party defendants whose assets are at issue and the only firms that have access to these entities (and their officers, directors, employees, and documents).

---

[1] Pursuant to direct authorizations from corporate or governmental representatives, we represent: (1) Ministerio del Poder Popular de Economía y Finanzas y Comercio Exterior (the "Ministry of Finance"); (2) Banco de Venezuela S.A.; (3) Banco Universal; (4) Banco Bandes Uruguay, S.A.; (5) Banco Digital de los Trabajadores, Banco Universal C.A. (f/k/a Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunas, Banco Universal C.A.); (6) Petrocedeño, S.A.; (7) Aceites y Solventes Venezolanos Vassa, S.A.; (8) Venfleet Asphalt, Ltd.; (9) Venfleet Products, Ltd.; (10) Venfleet, Ltd.; (11) Petro San Felix, S.A.; (12) Venezuelan Heavy Industries, C.A.; (13) Petrowarao, S.A.; (14) Petróleos de Venezuela, S.A. and (15) PDV Marina, S.A. (together, the "Venezuelan Third Parties").

## I.    LCJ/Kellner, Not White & Case, Was Retained by The Venezuelan Entities

In our September 30th letter brief and prior formal briefing, we detailed how our firms were appointed by the clients' actual officers and directors – those who speak and act for the entities in all operational, legal, and financial matters and who have access to witnesses, documents, and information to assist counsel in these matters. Each of the Venezuelan entities have provided a written authorization letter from an officer or legal representative confirming LCJ/Kellner's authority to represent the clients in these related actions. *See, e.g.,* ECF Nos. 425-1 and 425-2 in *Stansell v. FARC*, No. 16-405. It is well established that "a company is a separate legal entity from its shareholders and that a company's management, not its majority shareholder, has the prerogative to select which counsel shall represent the company in court proceedings." *Caballero v. FARC et al*, 2022 WL 130924, at *8, No. 20-cv-01939 (D. Conn. Jan. 13, 2022) ("ALBA Case"). "When a company has to hire counsel, it does not have to convene a shareholders meeting for the shareholders to decide who will be retained. The day-to-day decisions of a company are the responsibility of its management, not its shareholders." *Id.* A company "can speak only through its officers and directors" and the "identities of those officers and directors matters." *PDVSA U.S. Litig. Tr. v. LukOil Pan. Ams. LLC*, 65 F.4th 556, 562 (11th Cir. 2023).[2]

White & Case argues that the Court should ignore that reality and ignore the entities' very existence as separate and distinct corporate bodies to prevent their chosen counsel from appearing on their behalf. White & Case's purported authority comes from a purported government-in-exile that speaks, at most, for those who claim to act for the Venezuelan government outside Venezuela. White & Case claims no authority from any board of directors or officers of the entities themselves.

White & Case's position would require the Court to ignore the corporate existence of each Venezuelan entity involved in these proceedings. Its recent appearances last week, purportedly on behalf of Venezuelan banking entities Banco Bandes Uruguay SA ("BBU") and Banco de Venezuela S.A., Banco Universal ("BDV") (ECF Nos. 197 and 198), illustrate the illusory nature of White & Case's authority.

BDV is a commercial company originally registered with the First Instance Civil Court of the Federal District of Venezuela in 1980. *See Stansell v. FARC*, No. 16-405, ECF No. 425-1 at 7. As an institution, it dates back over a hundred years. It operates retail and commercial banking operations, has brick and mortar locations throughout Venezuela, enters into contracts in its own name, and has all the separate rights and obligations of an independent corporate entity. While the Venezuela state has ownership interests, BDV is managed and operated by a board of directors and officers, not the President (neither Maduro, Guaidó, or any one else) nor the National Assembly (whether in Venezuela or outside Venezuela). BDV has a board. That board appointed LCJ/Kellner, not White & Case. *Id.*

BBU is a company based in Uruguay and incorporated in Montevideo on May 10, 2006. *See Stansell v. FARC*, No. 16-405, ECF No. 425-1 at 9. It, too, has operations, contracts, duties, and

---

[2] White & Case argues that *LukOil* addressed an issue identical to the issue here. *LukOil*, however, involved two competing boards: one appointed by Maduro and the other by Guaidó. *Id.* at 563 ("the district court cannot question the validity of then-President Guaidó's appointment of an alternative board of directors"). Here, on the other hand, White & Case cites to no competing boards of the client companies and there are no alternative directors for the Court to question.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

rights separate and apart from those of its owners. It, too, has a board and that board appointed LCJ/Kellner, not White & Case. *Id.*[3]

The question of who has been authorized to represent these entities is thus not a political question at all. To resolve the issue, the Court need not decide whether the 2018 Venezuelan elections were fraudulent, whether the National Assembly outside Venezuela or the National Assembly in Caracas has the right to speak for Venezuela, or whether any other matter on which the United States Executive Branch has spoken. The Executive Branch has been wholly silent on the identities of the directors and officers of the Venezuelan corporations at issue, including BDV and BBU. To hold otherwise would be to disregard those entities' valid corporate forms and separate legal identities.

White & Case's only purported authority to represent the PDVSA subsidiaries comes from the Ad Hoc Board, a creation outside Venezuela. And, most recently, White & Case claims that this National Assembly established a new body for managing asset protection: the Council for the Administration and Protection of Assets ("CAPA"), and that CAPA has now engaged White & Case to represent the Ministry of Finance, BANDES, BDV, BBU, and Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunas, Banco Universal, C.A. This happened long after LCJ/Kellner appeared for the banks and the Ministry of Finance in these cases.

White & Case *does not* claim any authority to represent the Venezuelan entities stemming from the directors or officers of the entities themselves. Nor does White & Case claim that the Ad Hoc Board or CAPA have the authority to appoint the directors or officers of the entities themselves.

There is simply no basis for White & Case's contention that their so-called retention by the Ad Hoc Board or CAPA trumps our retention by the actual directors and officers of the entities themselves. Indeed, to do so would violate the Venezuelan entities' due process right to select their own counsel. *See Polin v. Kellwood Co.*, 866 F. Supp. 140, 142 (S.D.N.Y. 1994) (reaffirming the well-established principle that courts "must be solicitous of a client's right to freely choose his counsel").

## II.    LCJ/Kellner Has Access to the Venezuelan entities.

While White & Case lacks the legal authority to represent the separate Venezuelan entities, the practical impact of this illusory authority is also significant. White & Case simply cannot marshal the evidence from the entities that would be required to effectively represent the entities' interests in these cases, resulting in a denial of due process.

This reality was recently illustrated on October 22, 2025, in the *Stansell v. FARC* case pending in the Southern District of Florida (No. 19-20896). There, Chief Magistrate Judge Torres scheduled an evidentiary hearing on a motion to vacate filed by White & Case on behalf of Petrocedeño, S.A., involving funds that were turned over to the plaintiffs years ago.[4] White & Case failed to offer any evidence at the hearing, however, and only presented argument. At the conclusion of the

---

[3] As detailed in our prior briefs and the supporting authorizations appointing LCJ/Kellner as their counsel, the remaining Venezuelan entities similarly have significant business operations run by their own officers and directors.

[4] The funds at issue were disbursed to counsel and then to counsel's clients in 2020. *See* Exhibit 1 at 11:19–2; *id.* at 64:5–7.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

hearing, the Court provided White & Case with "one last opportunity" to present a proffer of evidence in support of its motion to vacate and ordered White & Case to submit such a proffer by November 24, 2025. *See* Transcript of October 22, 2025 Hearing at 125:20–25, attached as Exhibit "1". White & Case resisted producing any such proffer or evidence, complaining that it would not have time to do so and would not know what to refute. The Court, seemingly incredulous, noted that:

> [Plaintiffs] are alleging that your client was an agency or instrumentality of the FARC. Presumably, there would be somebody within your entity who has knowledge of their allegations, especially considering that the evidence that they relied upon is of record and you have it. Right? So, at a minimum, whoever you are going to rely upon to present factual testimony then has some level of personal knowledge as to their obligations. You would present it in an affidavit form.

*Id.* at 129:8–18. White & Case continued to resist such a proffer, admitting "[w]e don't have all of the information." *Id.* at 134:7–8. Again, the Court pushed back at this objection:

> most important, you have something that the plaintiff doesn't have, which is firsthand knowledge of people from your client who are being accused of having been an instrumentality of a money laundering scheme that furthered the FARC's interest. That's the allegation. That's no secret. So, I would start with my client first and then work your way up from there.

*Id.* at 134:11–18. The problem for White & Case, of course, is that there nobody within the entity that appointed them counsel with access to the client or anyone with personal knowledge that could refute plaintiffs' allegations, because nobody actually with the entity appointed them at all. White & Case cannot access the firsthand knowledge of people from the client and cannot "start with [the] client first and then work [its] way up from there" because White & Case has no access to or contact with the actual client. This is not a hypothetical problem but a real and current limitation on White & Case's ability to represent the Venezuelan corporate entities.

The Court in the ALBA Case pending in the District of Connecticut noted this critical limitation with White & Case's purported representation, noting that White & Case was unaware of the "acts taken" on the ground by the company yet instead "posits a peremptory right for PDVSA to decide on [the affiliate's] behalf who shall represent the company in court proceedings and *over the objection of company management*." *Caballero* at ECF 158 at 14 (emphasis supplied). The Court rejected White & Case's "Act of State Doctrine" argument (the same argument raised here) after a detailed analysis. ALBA Case ECF 158 at 14–17. Undersigned counsel continues to represent the ALBA company in the District of Connecticut.

By contrast, as detailed in our September 30th letter brief and prior formal briefing, we have repeatedly illustrated our access to the Venezuelan entities. Just yesterday, we submitted a sworn declaration of Sergio Julio Lotartaro Tovar, the President of Banco Digital de los Trabajadores, Banco Universal C.A. (f/k/a Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunas, Banco Universal C.A.) ("BDT") in support of BDT's motion to vacate a turnover order. *See Albán v. Moros*, No. 21-20706 (S.D. Fla), ECF No. 747-1. Mr. Lotartaro's declaration makes clear that BDT operates a commercial banking and loan business and has a board of directors (and it

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

appointed LCJ/Kellner, not White & Case). *See id.* ¶¶ 3–4. And, unlike White & Case, our firms were able to submit sworn testimony relating to the underlying issues.

This distinction is critical. We are the only counsel who can speak with the actual defendants and their employees and representatives, and the only counsel who has access to their documents and records. Our retention is thus critical to preserving the Venezuelan entities' due process right to present evidence to refute the erroneous "agency or instrumentality" allegations leveled against them. *See Stansell v. FARC*, 771 F.3d 713, 727 (11th Cir. 2014) ("Without notice and a fair hearing *where both sides are permitted to present evidence*, the third party never has an opportunity to dispute its classification as an agency or instrumentality.") (emphasis added). White & Case simply cannot present such evidence.

We have been directly authorized by our clients (the Venezuelan entities) to represent their interests, while White & Case has been authorized by their different clients (the PDVSA Ad Hoc Board of Directors and CAPA) to represent their interests. Both the Ad Hoc Board of Directors/CAPA, and the Venezuelan entities directly, assert the right to protect and exercise control over the funds at issue through counsel selected by their representatives. Both assert competing rights to control the funds at issue. Denying our clients, the Venezuelan entities themselves, of their counsel of choice would permanently take away their right to assert control over the funds and deprive them of their property without due process.

By filing this letter, our clients do not waive and expressly preserve any rights and defenses, including but not limited to defenses based on personal jurisdiction, subject-matter jurisdiction, and service of process.

Respectfully submitted,

*/s/ Marcos Daniel Jiménez*
Marcos Daniel Jiménez
New York Bar No. 4881736
Stephen S. Stallings
Fla Bar No. 958859 (*pro hac vice*)
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: 305.570.3249
Email: mdj@leoncosgrove.com
Email: sstallings@leoncosgrove.com

*Counsel for Venezuelan Third Parties*

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM